HEWLETT–PACKARD COMPANY, a California Corporation, et al., Plaintiffs,

v.

Willie R. BARNES, Commissioner of Corporations of the State of California, Defendant,

John Scalone et al., Plaintiffs in Intervention.

No. C–76–1607–CBR.

United States District Court, N. D. California.

Jan. 24, 1977.

Pillsbury, Madison & Sutro, Parker A. Maddux, Michael H. Salinsky, Woodrow R. Cossey, San Francisco, Cal., for plaintiffs.

Evelle J. Younger, Atty. Gen., State of Cal., Mervin R. Samuel, Randall P. Borcherding, Tyler Pon, San Francisco, Cal., for defendant.

Schwartz, Steinsapir & Dohrmann, Richard D. Sommers, Howard M. Knee, Los Angeles, Cal., for plaintiff in intervention Southern California Drug Benefit Fund.

Brobeck, Phleger & Harrison, Jean C. Gaskill, Melinda S. Collins, San Francisco, Cal., for plaintiff in intervention Wells Fargo & Co.

Littler, Mendelson, Fastiff & Tichy, John T. Hayden, Brundage, Beeson, Tayer & Kovach, Duane B. Beeson, San Francisco, Cal., for plaintiff in intervention Joint Benefit Trust.

## MEMORANDUM OF OPINION

RENFREW, District Judge.

Plaintiffs commenced this action to prevent defendant Willie R. Barnes, Commissioner of Corporations of the State of California, from requiring them to comply with the California Knox-Keene Health Care Service Plan Act of 1975, Cal.Health & Safety Code § 1340, et seq. ("Knox-Keene"). Plaintiffs Standard Oil Company of California ("Standard"), Hewlett-Packard Company ("Hewlett-Packard"), The Pacific Lumber Company ("Pacific"), and The Pacific Lumber Company Employee Benefits Organization ("Pacific Employee Organization") filed the original complaint in this action on July 30, 1976. Pursuant to stipulation among plaintiffs, defendant, and intervenors, John Scalone and Freddy Sanchez as Trustees of the Joint Benefit Trust established by California Processors, Inc., and the California State Council of Cannery and Food Processing Unions ("Joint Benefit Trust") and Wells Fargo and Company ("Wells Fargo") were permitted to intervene as plaintiffs on September 1, 1976. In addition, on September 26, 1976, the Court granted the motion of Southern California Drug Benefit Fund ("Benefit Fund") to intervene as plaintiff.

The original and intervening plaintiffs are employers engaged in commerce or employee benefit organizations representing employees engaged in commerce which maintain various employee health benefit plans. Standard, Hewlett-Packard, and Wells Fargo offer self-funded plans which reimburse 80% or more of certain health care expenses independently contracted for and incurred by their employees, annuitants, and covered dependents in California and other states.[1] Pacific Employee Organization, a nonprofit Delaware corporation, maintains similar benefit plans for the employees and annuitants of Pacific and their covered dependents.[2] Joint Benefit Trust and Benefit Fund, employer-union health and welfare trust funds, maintain comparable plans for employees and annuitants in the drug and canning industries, respectively, and their dependents.[3] In addition, as alternatives to the self-funded indemnity plans, Benefit Fund offers its participants the option of participating in Kaiser Health Plan, Inc., for hospital, medical and surgical care, and in a prepaid dental plan which it has arranged with contracting doctors.[4]

Each of these plans is concededly an "employee welfare benefit plan" within the meaning of Section 3 of the Employee Retirement Income Security Act of 1974 ("ERISA"),[5] 29 U.S.C. § 1003(a), and is therefore subject to regulation under that act.[6] Each is also admittedly a "health care service plan" within the meaning of Article

1. Affidavit of Robert K. Maggy, Manager of the Benefits Division of Standard's Personnel Department, executed July 29, 1976; Affidavit of Ray L. Wilbur, Vice President in Charge of Human Resources and Development of Hewlett-Packard, executed July 30, 1976; Affidavit of George Innes, Assistant Vice President of Wells Fargo, executed August 31, 1976.

2. Affidavit of Gene G. Elam, Vice President of Finance of Pacific, executed July 27, 1976.

3. Affidavit of Peter Morse, Director of Administrative Procedure for United States Administrators of Beverly Hills, California (which administers Joint Benefit Trust), executed August

27, 1976; Affidavit of David L. Mauss, Associate Administrator of Southern California Retail Clerks Union and Drug and General Sales Employer Trust Fund, executed October 15, 1976.

4. Affidavit of David L. Mauss, supra, n. 3.

5. Pub.L. No. 93–406, 88 Stat. 829 (codified at 29 U.S.C. § 1001, et seq. (Supp. IV, 1974)).

6. With exceptions not relevant here, ERISA applies to

One of Knox-Keene[7] and, according to defendant, is subject to regulation under the state statute. Invoking the supremacy clause of the federal Constitution,[8] plaintiffs seek a declaration that ERISA preempts Knox-Keene insofar as Knox-Keene applies to the benefit plans which they maintain, and a permanent injunction prohibiting the regulation of these plans under the state statute.

Defendant contends that ERISA does not preempt Knox-Keene with respect to plaintiffs' plans for two reasons. First, he contends that neither the language of ERISA's preemption clause, Section 514(a) of ERISA, 29 U.S.C. § 1144(a), nor the statute's legislative history unmistakably mandates preemption of state legislation regulating health services such as Knox-Keene. Second, he asserts that Knox-Keene is a state law regulating insurance and thus expressly excluded from preemption under Section 514(b)(2) of ERISA, 29 U.S.C. § 1144(b)(2)(A). In addition, he argues that, if ERISA had so broadly preempted state regulation of health care services, Section 514(a) of the Act is unconstitutional as violative of the Tenth Amendment to the federal Constitution.

■ On September 30, 1976, the Court ordered a consolidation of the hearing on plaintiffs' motions for a preliminary injunction and the trial on the merits, pursuant to Rule 65(a)(2) of the Federal Rules of Civil Procedure. Between October 20 and 26, 1976, each of the plaintiffs filed motions for summary judgment. Defendant likewise filed a motion for summary judgment on November 19, 1976. The Court held a consolidated hearing on November 30, 1976. Having heard extensive oral argument and fully considered the parties' written submissions, the Court issued from the bench a declaratory judgment that ERISA preempts the state's regulation of plaintiffs' employee benefit plans under Knox-Keene and a permanent injunction against the enforcement of Knox-Keene as to these plans.[9] However, given the importance and relative novelty of the question, the Court felt that a written discussion of its rationale for the decision would be appropriate.

7. "any employee benefit plan if it is established or maintained—
"(1) by any employer engaged in commerce or in any industry or activity affecting commerce; or
"(2) by any employee organization or organizations representing employees engaged in commerce or in any industry or activity affecting commerce; or
"(3) by both." 29 U.S.C. § 1003(a).
29 U.S.C. § 1002(3) defines "employee benefit plan" to include "employee welfare benefit plan" which is in turn defined as
"any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions)." 29 U.S.C. § 1002(1).

7. Cal.Health & Safety Code § 1345(f) defines a "health care service plan" as "any person who undertakes to arrange for the provision of health care services, including basic health care services, to subscribers or enrollees, or to pay for or to reimburse any part of the cost for such services, in return for a prepaid or periodic charge paid by or on behalf of such subscribers or enrollees, and who does not substantially indemnify subscribers or enrollees for the cost of provided services."

8. The United States Constitution, art. 6, cl. 2, provides, in relevant part:
"This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land * * *."

9. This action was commenced on July 30, 1976, prior to the effective date of The Three Judge Court Amendments, Pub.L. No. 94–381, Aug. 12, 1976. However, even under prior law, three judge courts were not required in supremacy clause cases involving only federal-state statutory conflicts, such as the instant case. *Swift & Co. v. Wickham*, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965).

ERISA is a broad-based legislative scheme designed to protect interstate commerce, the federal taxing power, and the interests of participants in private employee benefit plans and their beneficiaries. Congress sought to accomplish these goals by requiring disclosure and reporting to plan participants; by establishing standards of conduct, responsibility and obligation for fiduciaries of such plans; by providing appropriate remedies, sanctions, and ready access to the federal courts; and by improving the equitable character and soundness of such plans. 29 U.S.C. § 1001(b)(c).

Effective since July 1, 1976, Knox-Keene governs the delivery of health care services to California residents who participate in health care service plans. In enacting Knox-Keene, the California legislature intended to promote the delivery of low cost, quality health care through financially sound plans to participants well informed of the benefits of various available plans. Cal. Health & Safety Code § 1342. Knox-Keene regulates such areas as funding, disclosure, sales practices, and quality of services, and requires that any such plan be licensed by the state Commissioner of Corporations. Although primarily concerned with entities, plans, or contracts which directly deliver health care services, the statute seeks to regulate as well those which provide insurance-type coverage, including self-funded plans such as those maintained by plaintiffs.

■ When Congress exercises a granted power in a field which states have traditionally occupied, and unmistakably evinces its intent to exclude states from exerting their police power in that field, the federal legislation may displace state law under the Supremacy Clause. *See Florida Lime & Avocado Growers, Inc. v. Paul,* 373 U.S. 132, 142, 146–147, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963); *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 229–231, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947).

■ Section 514(a) of ERISA, 29 U.S.C. § 1144(a), provides:

"Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975."

Although defendant finds the phrase "relate to" "vague and ambiguous,"[10] the Court doubts that Congress could have chosen any more precise language to express its intent to preempt a state statute such as Knox-Keene insofar as it seeks to regulate ERISA-covered employee benefit plans such as those maintained by plaintiffs.[11]

■ Where the language of a statute unequivocally expresses its meaning, courts do not face the questions of interpretation which warrant a search of legislative history. *Caminetti v. United States,* 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917). However, as an examination of the legislative history dispels any doubt as to the

---

10. Defendant suggests that, if broadly construed, the language of the preemption clause might be interpreted to mandate the supersession of state regulation of organizations which provide and professionals who render health care service on the theory that such regulation "relate[s] to" employee benefit plans. Whether or not such an interpretation would, in any of the many contexts in which it might arise, comport with the language, history and purpose of ERISA is not for this Court to decide. Neither the outer boundaries of ERISA's preemption provision, nor the permissibility of Knox-Keene's regulation of health care providers, are issues before the Court in this action.

11. The Court's decision ought not surprise the defendant as it is consistent with legal advice offered the state prior to and during the pendency of this suit. In a letter to the Commissioner of Corporations, dated July 14, 1976, James D. Hutchinson, Administrator of Pension and Welfare Benefit Programs for the United States Department of Labor, stated his belief that Knox-Keene could not be applied to employee welfare benefit plans subject to ERISA. Peter Melnicove, Deputy Legislative Counsel of the State of California, expressed a similar opinion in a letter to State Senator Alfred E. Song, dated October 25, 1976.

provision's meaning, a brief discussion may be instructive.

The history of ERISA indicates that Congress, while attempting to formulate legislation concerning employee benefit plans, devoted considerable attention to the question of preemption. Over a period of years, Congress heard testimony from a number of individuals who held widely divergent views on the proper scope of federal preemption in the area.[12] While both houses favored preemption of some variety, the House and Senate originally outlined its scope somewhat differently. The House version of H.R. 2, 93d Cong., 1st Sess. (1973), the bill from which ERISA derives, generally limited the scope of preemption to state regulation of areas expressly covered by the bill; i. e., reporting, disclosure, and fiduciary duties with respect to employee benefit plans. In addition, it specifically preempted state regulation involving funding, financing, and forfeitability of such plans.[13] Somewhat more ambiguously, the Senate version of H.R. 2 preempted state law insofar as it "relate[s] to subject matters regulated by this Act or the Welfare and Pension Disclosure Act * * * ."[14]

The more sweeping and precise language of Section 514 of ERISA was developed in conference committee. The Conference Report indicates that the committee intended preemption just as broad as the statutory language suggests:

"Under the substitute, the provisions of title I are to supersede all State laws that

12. E. g., compare Statement of Andrew J. Biemiller, Director, Department of Legislation, AFL–CIO, Hearings on H.R. 5741 (Proposed Welfare and Pension Plan Protection Act) before the General Subcom. on Labor of the House Comm. on Education and Labor, 90th Cong., 2d Sess., at 186 (1968), and Statement by Preston C. Basset on behalf of Towers, Perrin, Forster & Crosby, Inc., Hearings on H.R. 2 and H.R. 462 (Proposed Revisions of the Welfare and Pension Plans Disclosure Act) before the General Subcom. on Labor of the House Comm. on Education and Labor, 93d Cong., 1st Sess., pt. 1, at 315 (1973) and Statement of Lauren Upson, Member, California Banker's Association Committee on Employee Benefit Trusts. Hearings on H.R. 2 and H.R. 462, supra, pt. 2, at 651 (each urging a broad preemption provision to ensure the protection of plan participants and to avoid chaotic dual regulation) with Statement of Robert D. Haase, Commissioner of Insurance, State of Wisconsin, Hearings on H.R. 5741, supra, at 338 and Statement of John P. Thompson for The Southland Corporation, Hearings on H.R. 2 and H.R. 462, supra, pt. 1, at 554–555 and Statement of Stanley C. DuRose, Jr., Commissioner of Insurance of the State of Wisconsin, Hearings on H.R. 2 and H.R. 462, supra, pt. 2, at 188–195 (each urging legislation that would allow for cooperative federal and state regulation).

13. Instead of the language of Section 514(a) of ERISA, the version of H.R. 2 enacted by the House on February 28, 1974, provided:
"Sec. 514. (a) It is hereby declared to be the express intent of Congress that, except for actions authorized by section 503(e)(1)(B) of this Act and except as provided in subsection (b) of this section the provisions of part 1 of this subtitle shall supersede any and all

laws of the States and of political subdivisions thereof insofar as they may now or hereafter relate to the reporting and disclosure responsibilities, and fiduciary responsibilities, of persons acting on behalf of any employee benefit plan to which part 1 applies.

\* \* \* \* \* \*

"(c) It is hereby declared to be the express intent of Congress that the provisions of parts 2, 3, and 4 of this subtitle shall supersede any and all laws of the States and of political subdivisions thereof insofar as they may now or hereafter relate to the nonforfeitability of participant's benefits in employee benefit plans described in section 201(a) or 301(a), the funding requirements for such plans, the adequacy of financing of such plans, portability requirements for such plans, or the insurance of pension benefits under such plans." 120 Cong.Rec. 4742 (1974).

14. Instead of the language of Section 514(a) of ERISA, the version of H.R. 2 enacted by the Senate on March 4, 1974, provided:
"Sec. 699. RELATIONSHIP TO STATE LAWS
"(a) PRE–EMPTION OF STATE LAWS.— It is hereby declared to be the express intent of Congress that except for actions authorized by section 694 of this title, the provisions of this Act or the Welfare and Pension Plans Disclosure Act shall supersede any and all laws of the States and of political subdivisions thereof insofar as they may now or hereafter relate to the subject matters regulated by this Act or the Welfare and Pension Plans Disclosure Act * * * ." 120 Cong. Rec. 5002 (1974).

relate to any employee benefit plan that is established by an employer engaged in or affecting interstate commerce or by an employee organization that represents employees engaged in or affecting interstate commerce. (However, following title I generally, preemption will not apply to government plans, church plans not electing under the vesting, etc., provisions, workmen's compensation plans, non-U.S. plans primarily for nonresident aliens, and so-called 'excess benefit plans.')" S.R. 93–1090, 93d Cong., 2d Sess. 383 (1974).

Statements made in the House and Senate debates which preceded the enactment of the conference committee's version of the bill demonstrate that Congress both comprehended the change and intended the statute to occupy the entire field of employee benefit plan regulation. Senator Harrison Williams, Jr., Chairman of the Senate Committee on Labor and Public Welfare, emphasized the broad scope of Section 514:

"It should be stressed that with the narrow exceptions specified in the bill, the substantive and enforcement provisions of the conference substitute are intended to preempt the field for Federal regulations, thus eliminating the threat of conflicting or inconsistent State and local regulation of employee benefit plans. This principle is intended to apply in its broadest sense to all actions of State or local governments, or any instrumentality thereof, which have the force or effect of law." 120 Cong.Rec. 29933 (1974).

Similarly, Congressman John Dent, Chairman of the Subcommittee on Labor of the House Labor and Education Committee, explained:

"Finally I wish to make note of what is to many the crowning achievement of this legislation, the reservation to Federal authority the sole power to regulate the field of employee benefit plans. With the preemption of the field, we round out the protection afforded participants by eliminating the threat of conflicting and inconsistent State and local regulation.

\* \* \* \* \* \*

"The conferees, with the narrow exceptions specifically enumerated, applied this principle in its broadest sense to foreclose any non-Federal regulation of employee benefit plans. Thus, the provisions of section 514 would reach any rule, regulation, practice or decision of any State, subdivision thereof or any agency or instrumentality thereof—including any professional society or association operating under color of law—which would affect any employee benefit plan as described in section 4(a) and not exempt under section 4(b)." 120 Cong.Rec. 29197 (1974).

Finally, Senator Jacob Javits, the ranking minority member of the Senate Committee on Labor and Public Welfare, stressed the intentional replacement of a limited preemption provision with the more comprehensive language of Section 514(b)(2):

"Both House and Senate bills provided for preemption of State law, but—with one major exception appearing in the House bill—defined the perimeters of preemption in relation to the areas regulated by the bill. Such a formulation raised the possibility of endless litigation over the validity of State action that might impinge on Federal regulation, as well as opening the door to multiple and potentially conflicting State laws hastily contrived to deal with some particular aspect of private welfare or pension benefit plans not clearly connected to the Federal regulatory scheme.

"Although the desirability of further regulation—at either the State or Federal level—undoubtedly warrants further attention, on balance, the emergence of a comprehensive and pervasive Federal interest and the interests of uniformity with respect to interstate plans required—but for certain exceptions—the displacement of State action in the field of private employee benefit programs.

The conferees—recognizing the dimensions of such a policy—also agreed to assign the Congressional Pension Task Force the responsibility of studying and evaluating preemption in connection with State authorities and reporting its findings to the Congress. If it is determined that the preemption policy devised has the effect of precluding essential legislation at either the State or Federal level, appropriate modifications can be made." 120 Cong. Rec. 29942 (1974).

Overall, the legislative history reveals both that Congress carefully considered the question of preemption, including the feasibility of enacting a more limited preemption provision, and that Congress ultimately enacted Section 514(a) with the express purpose of summarily preempting state regulation of ERISA-covered employee benefit plans. That the statute, standing alone or buttressed by its legislative history, was intended to supersede state regulation of benefit plans such as plaintiffs' is indisputable.

Assuming that Section 514(a) would otherwise dictate preemption in this case, defendant argues that Knox-Keene is a state law which regulates insurance, expressly excluded from preemption under Section 514(b)(2)(A) of ERISA, 29 U.S.C. § 1144(b)(2)(A). Section 514(b)(2)(A) states:

"Except as provided in subparagraph (B), nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities."

Examining both Knox-Keene's definition of a "health care service plan" [15] and the statutory scheme as a whole, and demonstrating in some detail that the statute seeks to oversee plans which possess the risk-transferral and spreading functions endemic to insurance through modes of regulation characteristic of insurance law, defendant concludes that Knox-Keene, as it relates to plaintiffs' benefit plans, is a state law regulating insurance within the meaning of Section 514(b)(2)(A).

Defendant's reasoning might be more persuasive had Congress not specifically precluded a state's ability to classify an employee benefit plan "insurance" and thus escape preemption. Section 514(b)(2)(B) of ERISA, 29 U.S.C. § 1144(b)(2)(B), states:

"Neither an employee benefit plan described in section 1003(a) or this title, which is not exempt under section 1003(b) of this title (other than a plan established primarily for the purpose of providing death benefits), nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer, bank, trust company, or investment company or to be engaged in the business of insurance or banking for purposes of any law of any State purporting to regulate insurance companies, insurance contracts, banks, trust companies, or investment companies."

The fact that the state considers employee benefit plans to be a unique variety of insurance arrangement, and subjects them to specialized regulation under Knox-Keene rather than generalized regulation under the entire panoply of law addressed to traditional insurers, makes no difference under ERISA. In seeking to regulate plaintiffs' plans pursuant to Knox-Keene under the theory that the statute applies to and that such plans constitute "insurance," defendant contravenes the clear intent of Section 514(a) and (b) of ERISA that employee benefit plans, so dubbed or under any other name, be free of state regulation.

■ Finally, defendant argues that ERISA is an unconstitutional exercise of power under the Commerce Clause. The constitutionality of federal legislation under the Commerce Clause is determined by a two-part test. Congress must (1) have a rational basis to find that the regulated activity affects interstate commerce, and (2) select a means of regulation reasonable and appropriate to achieve that end. *Atlanta Motel v. United States*, 379 U.S. 241, 258–259, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964). *See also McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 421, 4 L.Ed. 579 (1819).

**15.** See n. 7, *supra*.

Defendant does not dispute that Congress could rationally determine that employee benefit plans affect interstate commerce.[16] Rather, he purports to challenge the means of regulation chosen by Congress. Specifically, he contends that full federal preemption of state regulation of employee benefit plans under Section 514(a) is unreasonable and inappropriate[17] in that the Tenth Amendment to the federal Constitution[18] precludes such a broad substitution of national for local regulation.

When fairly viewed, this argument concedes the substantive due process challenge and posits a different question: Whether an otherwise valid exercise of Congressional power under the Commerce Clause is subject to limitation under the Tenth Amendment. The answer is little disputed. Courts have repeatedly held that the Tenth Amendment imposes no limitation on Congress's application of the commerce power to private activity.[19]

The Supreme Court stated in *Case v. Bowles*, 327 U.S. 92, 66 S.Ct. 438, 90 L.Ed. 552 (1946):

"[T]he Tenth Amendment 'does not operate as a limitation upon the powers, express or implied, delegated to the national government.' [footnote omitted]

"Where as here, Congress has enacted legislation authorized by its granted powers, and where at the same time, a State has a conflicting law which but for the Congressional Act would be valid, the Constitution marks the course for courts to follow. Article VI provides that 'The Constitution and the Laws of the United States * * * made in Pursuance thereof * * * shall be the supreme Law of the Land * * *' [footnote omitted]." 327 U.S. at 102–103, 66 S.Ct. at 443.

In *Oklahoma v. Atkinson Co.*, 313 U.S. 508, 61 S.Ct. 1050, 85 L.Ed. 1487 (1941), the Supreme Court also stated:

"The Tenth Amendment does not deprive 'the national government of authority to resort to all means for the exercise of a granted power which are appropriate and plainly adapted to the permitted end.' [citations omitted]. Since the construction of this dam and reservoir is a valid exercise by Congress of its commerce power, there is no interference with the sovereignty of the state [footnote omitted]." 313 U.S. at 534, 61 S.Ct. at 1063.

Here, where Congress has legitimately concluded that employee benefit plans so affect interstate commerce as to warrant federal intervention, and has reasonably determined that the preemption of contemporaneous state legislation is necessary to accomplish its legislative purposes, the Tenth Amendment poses no bar to ERISA's operation.

16. Congress stated its findings with respect to the effect of employee benefit plans on interstate commerce in Section 2(a) of ERISA, 29 U.S.C. § 1001(a).

17. In fact, defendant disputes more broadly the reasonableness of what he perceives to be Section 514(a)'s "wholesale invalidation of State law in the area of health care." As this case involves only the question of whether Section 514(a) of ERISA preempts defendant's attempted regulation of plaintiffs' employee benefit plans under Knox-Keene, rather than a determination of the full breadth of the preemption clause, see n. 10 *supra*, the Court rendered its judgment upon and addresses here only the limited issue.

18. The Tenth Amendment states:

"The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

19. It is clear that the Tenth Amendment may restrict the ability of Congress to regulate states under the commerce power in a manner that adversely affect the states' sovereignty by impairing the states' integrity or their ability to function effectively in a federal system. *See National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 2468–2474, 49 L.Ed.2d 245 (1976); *Fry v. United States*, 421 U.S. 542, 547 n. 7, 95 S.Ct. 1792, 44 L.Ed.2d 363 (1975). However, in the instant case, the Court is concerned only with federal regulation in the private sector and as Section 4(b)(1) of ERISA, 29 U.S.C. § 1003(b)(1), expressly exempts from its coverage "governmental plan[s]," such a dramatic infringement of state sovereignty is not present here.

Accordingly, having determined that state regulation of the plaintiffs' ERISA-covered employee benefit plans under Knox-Keene is expressly and validly preempted by Section 514(a) of ERISA, the Court on November 30, 1976, granted summary judgment in favor of plaintiffs.