FRANK LUCAS INSURANCE AGENCY, INC. ET AL. v.
FIREMAN'S FUND AMERICAN INSURANCE ET AL.

[No. 616, September Term, 1980.]

*Decided March 5, 1981.*

The cause was argued before THOMPSON, MOYLAN and MELVIN, JJ.

*M. Stanley Radcliffe* for appellant Lucas Insurance, Inc. *Robert C. Fowler,* with whom were *Arnold M. Weiner* and *Melnicove, Kaufman & Weiner, P.A.* on the brief, for appellant Frank Lucas Insurance Agency, Inc.

*Amicus curiae* brief submitted by *Susan B. Orsher, J. Edward Davis* and *Weinberg & Green* for Independent Insurance Agents of America, Inc.

*David M. Buffington* and *Thomas V. Monahan,* with whom were *Semmes, Bowen & Semmes* on the brief, for appellees.

THOMPSON, J., delivered the opinion of the Court.

On January 1, 1974, Frank Lucas Insurance Agency, Inc. and Lucas Insurance, Inc., appellants, entered into separate Agency Agreements with Fireman's Fund American Insurance, et al., appellees. Due to unfavorable loss ratios, the appellees terminated the agreements effective December 1, 1978, pursuant to the termination provisions of the agreements. The appellants filed separate complaints with the Insurance Commissioner contesting the cancellations. The Commissioner found no violation of any statute in the cancellation of the agency agreements. The appellants appeal to the Baltimore City Court, which affirmed the Commissioner's decision. The validity of the terminations is not at issue in the current proceedings. As required under Md. Ann. Code Art. 48A, § 234B (c), appellees renewed, through the appellants, policies which expired between December 1, 1978 and December 1, 1979. The present dispute arose with respect to renewals of policies made after December 1, 1979.

In the fall of 1979, appellees notified the appellants that they intended to send to the policyholders whose business had been written through the appellants a letter advising them of their rights with respect to renewal. The appellees contend this letter was designed to comply with Maryland statutes. The proposed letter read as follows:

> "As your agent no longer represents the Fireman's Fund Insurance Companies, the above captioned policy will not be renewed through that agency.
>
> "We suggest that you contact your agent to seek replacement of coverage with another Insurer upon expiration of your policy.
>
> "Maryland Statute states that no Insurer shall cancel or refuse to renew the policy of an Insured because of the termination of the agent's or broker's contract. You, therefore, have the option to continue your coverage with the Fireman's Fund Insurance Companies by contacting another agency which represents us; or if you desire, we can issue coverage on a direct basis from our office.
>
> "If we do not hear from you prior to the expiration date of the policy, we will assume you have replaced your coverage with another Insurer."

The appellants objected to the letter being mailed to their customers and claimed that the agency agreements entitled them to commissions on policies originally placed by them and renewed by the appellants after December 1, 1979. These issues were argued before Assistant Insurance Commissioner Thomas Paul Raimondi, who held in favor of appellants. The appellees appealed to the Baltimore City Court. The court reversed the order of the Insurance Commissioner. It held that neither appellant was entitled to commissions on policies renewed after December 1, 1979 and that appellees could send the proposed letter of notification to the policyholders.

Appellant, Frank Lucas Insurance Agency, Inc., now appeals from the holding that neither the Agency

Agreement nor the Limited Agency Agreement [1] entitle it to commissions on renewals effected pursuant to Md. Ann. Code Art. 48A, § 234A, i.e., occurring after December 1, 1979. Appellant, Lucas Insurance, Inc., appeals from the holding that the Agency Agreement does not entitle it to commissions on renewals effected pursuant to Art. 48A, § 234A and that the appellees are permitted to mail the notice letter to the policyholders. The appellants raise the following two questions: (1) Whether appellants are entitled to payment of commissions on policies produced by appellants prior to termination of the Agency Contracts but continued or renewed by appellees as required by statute; and (2) whether the letter which appellees undertook to send to policyholders is in violation of the Agency Contracts and misleading.

Before we undertake to discuss the questions presented we think it well to quote from the statute as to the standard of review for determinations made by the Insurance Commissioner. These standards are set out in Md. Ann. Code Art. 48A, § 40 (5):

> "(5) *Judgment.* — The court may affirm the decision of the Commissioner or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (i) In violation of constitutional provisions; or
>
> (ii) In excess of the statutory authority or jurisdiction of the Commissioner; or
>
> (iii) Made upon unlawful procedure; or
>
> (iv) Affected by other error of law; or
>
> (v) Unsupported by competent, material, and substantial evidence in view of the entire record as submitted; or

---

1. When the agency agreements were terminated on December 1, 1978, this appellant entered into a one year limited agency agreement with the appellees. This agreement was for the period during which appellees were required, under § 234B (c) to renew policies through the appellants.

(vi) Against the weight of competent, material and substantial evidence in view of the entire record, as submitted by the Commissioner and including de novo evidence taken in open court; or

(vii) Unsupported by the entire record, as submitted by the Commissioner and including de novo evidence taken in open court; or

(viii) Arbitrary or capricious."

Md. Ann. Code Art. 48A, §§ 234A and 234B prohibit an insurance company from cancelling or refusing to renew a policy for reasons which are not reasonably related to the insurer's economic and business purposes and specifically prohibit the refusal to renew because of the termination of the agent's contract.[2] The trial court found that the appellants' rights to commissions on the policies here in question were governed by the following section of the Agency agreements:

---

2. "§ 234A. *Unfairness or discrimination in underwriting.*

(a) No insurer, agent or broker shall cancel or refuse to underwrite or renew a particular insurance risk or class of risk for any reason based in whole or in part upon race, color, creed, sex, or blindness of an applicant or policyholder or for any arbitrary, capricious, or unfairly discriminatory reason. In the case of a cancellation of or refusal to renew a policy, provided the insured requests of the Commissioner that a review be undertaken of the insurer's action prior to the effective date of termination of the policy, and provided the Commissioner initiates action toward issuance of a finding in accord with § 234C, such policy shall remain in effect until such finding is issued. No insurer, agent or broker may cancel or refuse to underwrite or renew a particular insurance risk or class of risk except by the application of standards which are reasonably related to the insurer's economic and business purposes. At any hearing to determine whether there has been a violation of this section, the burden of persuasion shall be upon the insurer to demonstrate that the cancellation, or refusal to underwrite or renew is justified under the standards so demonstrated."

"§ 234B. *Cancellation of written agreement with broker or agent or refusal to accept business.*

(a) No insurer may cancel a written agreement with a broker or agent with respect to insurance or refuse to accept insurance business from such broker or agent unless it complies with the provisions of this section.

(b) If an insurer intends to cancel a written agreement with an agent or broker, or intends to refuse any class of renewal business from the agent or broker, the insurer shall give the agent or broker not less than 90 days written notice. Notwithstanding any provision of the agreement to the contrary, the insurer shall continue for not less than one year after termination of the agency agreement to renew through the agent or broker any of the policies which have not been replaced with other insurers as expirations occur. This subsection shall not apply to: (1) agents or brokers or policies of

"III. COMMISSIONS

* * *

(5) Agent shall have a vested interest in such commissions as are payable on contracts of insurance which contain a guaranty of renewal or which are continued by order of governmental authority, except where Agent is replaced as agent of record."

It made a finding, which has not been disputed here, that none of the contracts contained a guaranty of renewal and that the question was therefore to be resolved by determining the meaning of the words "which are continued by order of governmental authority, except where the Agent is replaced as agent of record." It found that the policies in question were neither "continued" nor were "by order of governmental authority" and that the Agent "was replaced as agent of record." We disagree with each of these three findings. In making his ruling as to the meaning of the word "continue" the trial judge stated:

"I think that the closest call, if you will, among these three criteria involves the word 'continue.' What is a policy which is continued? Even though it is a close question, it is the feeling of this Court that it is not synonymous with renewal. It is true that Appellee Lucas' Exhibit 2 contains the words 'Continuation Notice' on the top thereof; it is true that there were two expert witnesses who testified that the word 'continue' and the word 'renew' are

a company or group of companies represented by agents or brokers who by contractual agreement represent only that company or group of companies if the business is owned by the company or group of companies and the cancellation of any contractual agreement does not result in the cancellation or refusal to renew any policies of insurance; or, (2) life, health, surety, wet marine and title insurance policies.

(c) No insurer shall cancel or refuse to renew the policy of the insured because of the termination of the agent's or broker's contract.

(d) Notwithstanding any other provisions of this section, no insurer may cancel or amend a written agreement with an agent, or broker, or refuse to accept business from such agent or broker if the cancellation or amendment is arbitrary, capricious, unfair, discriminatory, or based in whole or part upon the race, creed, color, sex, religion, national origin, place of residency of the agent or broker, his applicants or policyholders."

synonymous. However, although these words may be synonymous in the trade I don't think that is what is called for in the given contract. I think the terms of a particular contract take precedence over general trade custom, practice or usage."

We think the trial judge was clearly erroneous in his fact finding because he disregarded the testimony of the insurance experts. The Court of Appeals, in *Abuc Trading and Sales Corp. v. Jennings,* 151 Md. 392, 415-16, 135 A. 166 (1926), stated:

"In *Williston on Contracts,* par. 607, it is said: 'The ultimate standard then in contracts of which a memorial has been made is the proper local meaning, under the surrounding circumstances, of the words or symbols agreed upon by the parties.' And while one of the primary rules in the interpretation of a contract is that the common or normal meaning will be given to the words in which it is expressed, yet if those words have locally a meaning different from that commonly or generally given to them, and were so understood by the parties, the local meaning will be accepted as controlling, and by local meaning is meant that which is peculiar to a locality, a trade, a profession and the like."

The application of this principle to the precise question before the Court illustrates the error of the trial judge in the instant case:

"In the course of the trial a question arose as to whether the term 'scrap copper' as used in the contract meant pure unalloyed copper, or whether it included all metals in which copper appeared as a basic element. In connection with that question the appellee, who was qualified to answer the question, was asked to state the difference between brass and copper. An objection to that question was overruled and that ruling is the subject of the first exception. The witness, in answer to that question,

said that in the trade all compounded metals which depended on copper for their base were known as copper, and that in classifying the metals on 'these boats the expression copper metals was from habit in the trade, and with full understanding of both parties, intended to cover all the metals which contained any percentage of copper, without designating any particular metals as showing certain percentage of the copper base.' " *Id.* at 415.

For a more recent statement of this doctrine, see *Truck Insurance Exchange v. Marks Rentals, Inc.,* 288 Md. 428, 434, 418 A.2d 1187 (1980). The appellees point to a number of cases which have drawn a distinction between the words 'continued' and 'renewed.' We do not think those cases are apposite. Here the question is: what does the insurance industry mean by the use of those words? The testimony was undisputed that in the industry the terms are used interchangeably.

The trial court held and the appellees argue that a statute is not an "order by governmental authority." We do not agree. If the appellees were correct, the result reached in this case would depend upon whether or not the insurer voluntarily carried out the statutory duty to continue the policies or waited until ordered to do so by some court or administrative agency. Whether or not the appellants are entitled to commissions should not be governed by any such construction. This alone is sufficient to distinguish this case from many others cited by the appellees in which courts have drawn a distinction between statutes and orders. We see no point in reviewing such cases in detail. It will suffice to say that in none of them would such a result as granting commissions be based upon whether or not the insurance company voluntarily continued or renewed policies or waited for an administrative or judicial order to do so. "An interpretation that is fair and reasonable is preferred to one which leads to an unreasonable result." *Stanbalt Realty Co. v. Commercial Credit Corp.,* 42 Md. App. 538, 545, 401 A.2d 1043 (1979). *See also, Cadem v. Nanna,* 243 Md. 536, 221

A.2d 703 (1966) and *City of Baltimore v. Industrial Electronics, Inc.,* 230 Md. 224, 186 A.2d 469 (1962).

The trial judge likewise ruled that the agent had been replaced within the meaning of the contract words "except where Agent is replaced as agent of record." Our query is: replaced by whom? The commissions claimed here are exclusively on policies where a new agent has not been named. If the termination of the Agency Agreement automatically resulted in replacement of the agent, then the language of the contract giving the terminated agent certain vested rights in renewal commissions would be meaningless. Under the cases cited above, we cannot accept such an interpretation of the agreement.

It is obvious under Md. Ann. Code Art. 48, §§ 234A and 234B, heretofore quoted, that policyholders are not to be required to take action in order for their coverage to be continued. It is well within the authority of the insurance commissioner to prohibit the company from mailing the insurer's statement that policyholders would be presumed to have replaced their insurance in the absence of affirmative word to the contrary.[3]

> *Judgment reversed.*
> *Case remanded for passage of order*
>   *in conformity with this opinion.*
> *Costs to be paid by appellees.*

---

3. The appellees' motion to strike the brief of the *amicus curiae* is denied.