## METROPOLITAN LIFE INSURANCE COMPANY *v.* INSURANCE COMMISSIONER OF THE STATE OF MARYLAND

[No. 791, September Term, 1981.]

*Decided March 3, 1982.*

The cause was argued before MOYLAN and LOWE, JJ., and CHARLES E. ORTH, JR., Associate Judge of the Court of Appeals (retired), specially assigned.

*J. Snowden Stanley, Jr.,* with whom were *Semmes, Bowen & Semmes* on the brief, for appellant.

*Thomas P. Barbera, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

We have here an employee benefit plan, substantially funded by insurance, providing certain benefits that had been reached by collective bargaining. The ultimate issue is whether Maryland may require the payment of benefits not as called for by the plan.

The plan concerned is maintained by the General Electric Company for the benefit of its employees and is subject to federal regulation under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. § 1001 *et seq.* The medical expense benefits payable under it are implemented by a group insurance policy issued by the Metropolitan Life Insurance Company. Metropolitan is a named fiduciary for the payment or denial of claims for benefits and the review of denied claims under the policy.

Metropolitan denied the claims of two General Electric employees, covered by the policy, seeking benefits for services for psychotherapy rendered by social workers. It was the position of Metropolitan that services of social workers were not within the terms of the plan.[1] However, Maryland

---

1. This conclusion is not challenged. The plan provided benefits for the services of physicians and surgeons and of psychologists, as defined in the

Code (1957, 1979 Repl. Vol., 1981 Cum. Supp.) Art. 48A, § 477-O (a) provides:

> "Every group or blanket health insurance policy delivered or issued· for delivery in this State or issued to a group which is incorporated or has a main office located in this State, or covering persons who reside or work within this State, which provides for reimbursement for any service which is within the lawful scope of practice of a licensed certified social worker shall provide such benefit whether the service is performed by a doctor of medicine or by a licensed certified social worker who has had at least two years or 3,000 hours of post-masters supervised clinical social work practice in a clinical program as established by the State Board of Social Work Examiners if the insured or the person covered by the policy was referred to the social worker by a physician."

It is undisputed that were the Metropolitan policy in compliance with this State statute, the benefits claimed by the two employees would be payable.

The Insurance Commissioner of the State of Maryland pursued the matter. Upon hearing, he ruled that "refusal by [Metropolitan] to include coverage and pay proper claims for the benefits provided under Section 477-O . . . in out of state group health insurance contracts, whether or not part of a retirement benefit plan, would constitute a violation of Section 477-O and 55 (2) (iv), Article 48A." [2] It ordered that such claims be paid. Metropolitan appealed to the Baltimore City

---

plan, who rendered services for which benefits were provided when performed or prescribed by a physician and a surgeon. "Social worker" was not embraced within the definition of "psychologist."

  **2.** Md. Code (1957, 1979 Repl. Vol.) Art. 48A, § 55 (2) (iv) authorizes the Commissioner to refuse to issue or to revoke or suspend an insurer's certificate of authority if the insurer "[w]ithout just cause unreasonably refuses or delays payment to claimants of the amount due them."

  Metropolitan states in its brief that pending the resolution of this matter, it is paying claims which might come within the purview of § 477-O out of its own funds as distinguished from the funds allocated for payment of claims under the group policy.

Court. It affirmed the order of the Commissioner. Metropolitan then appealed to this Court.

The validity of Art. 48A, § 477-O (a) on its face is not in question. The quarrel here is not the legislative mandate that group insurance policies must, under specified conditions, provide reimbursement for certain services performed by qualified social workers. It is, rather, that the requirement was impressed on a group insurance contract which is part of an employee benefit plan regulated by federal law. That law declares, as here applicable, that its provisions

"shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan. . . ." 29 U.S.C.A. § 1144 (a).

There follows, however, a saving clause:

"[N]othing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance. . . ." § 1144 (b) (2) (A).

And then there is a deemer clause:

"Neither an employee benefit plan . . . nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer . . . or to be engaged in the business of insurance . . . for purposes of any law of any State purporting to regulate insurance companies [or] insurance contracts. . . ." § 1144 (b) (2) (B).

The ultimate issue of whether Maryland, by statutory mandate, may require the payment of benefits not as called for by a federally regulated employee benefit plan provokes interplay between the federal act and the State statute. Vital to determination of the issue is the scope of ERISA's savings clause insurance exception to its preemption clause. Both the Commissioner and Metropolitan indicate that it is the clear and manifest intent of ERISA to supersede any and all State laws, with specified exceptions, insofar as they relate to an employee benefit plan, including a plan such as

the one here, implemented by an insurance policy. Nor is it disputed that ERISA explicitly purports not to preempt any State law which regulates insurance, and that it preserves existing federal laws which leave the regulation of insurance to the states.[3] So it is that preemption *vel non* of the Maryland statute, in its application to the General Electric benefit plan and implementing insurance policy, turns on whether it "regulates insurance" within the contemplation of the federal statute. Put precisely, the question is whether the application of the provisions of Art. 48A, § 477-O (a) of the Maryland Code to General Electric's employee benefit plan and the implementing Metropolitan insurance policy resulted in regulating insurance within the contemplation of 29 U.S.C.A. § 1144 (b) (2) (A). In resolving the question, we are guided by the rules of statutory construction.

The rules of statutory construction are fully set out in *State v. Fabritz,* 276 Md. 416, 421-422, 348 A.2d 275 (1975), *cert. denied,* 425 U.S. 942 (1976). The cardinal rule is to effectuate the real and actual intention of the legislature. Statutes are to be construed reasonably with reference to the purpose to be accomplished, and in light of the evils or mischief sought to be remedied, so that every statute must be considered in its entirety, and in the context of the purpose underlying its enactment. It should be construed according to the ordinary and natural import of its language, since it is the language of the statute which constitutes the primary source for determining the legislative intent. Results that are unreasonable, illogical or inconsistent with common sense should be avoided whenever possible consistent with the statutory language, with the real legislative intention prevailing over the intention indicated by the literal meaning. It is in the light of these principles that we consider the provision of 29 U.S.C.A. § 1144 (b) (2)

---

**3.** In addition to excepting State laws which regulate insurance, 29 U.S.C.A. § 1144 (b) (2) (A) excepts State laws regulating banking and securities. And the preemption clause does not apply "to any generally applicable criminal law of a State," § 1144 (b) (4), or to any law of the United States, § 1144 (d), thus preserving the McCarran-Ferguson Act, 15 U.S.C.A. §§ 1011-1015, which leaves the regulation of the insurance industry to the states.

(A) that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance. . . ." The phrase "regulates insurance" is not devoid of obscurity and free from ambiguity when applying it to a particular law.

The Congressional findings and declarations of policy set out in 29 U.S.C.A. § 1001 show dramatically that the Congress recognized that there was a serious problem of national magnitude and character with respect to employee benefit plans and that it perceived a need for a uniform and manageable solution. It found that such plans, whose growth in size, scope and number had been rapid and substantial in recent years, were a concern of national interest and directly affected the continued well-being and security of millions of employees and their dependents. Such plans had become an important factor influencing the stability of employment and the successful development of employee relations. But there was insufficient information given to employees concerning them and inadequate control established in the operation of them. It was essential that safeguards be provided as to the establishment, operation, and administration of such plans. Owing to the inadequacy of minimum standards, the soundness and stability of plans with respect to adequate funds to pay promised benefits were endangered; employees and their beneficiaries had been deprived of anticipated benefits. It was, therefore, desirable that minimum standards be provided assuring the equitable character of such plans and their financial soundness. § 1001 (a). The Congress declared it to be the policy of the Act to protect the interests of those concerned by, among other things, establishing standards of conduct, responsibility, and obligations for fiduciaries of employee benefit plans and by providing for appropriate remedies and sanctions and by requiring such plans to meet minimum standards of funding and to obtain plan termination insurance. § 1001 (b) and (c).

The legislation enacted by Congress in response to its findings and to fulfill its policy declarations was "a comprehensive regulatory scheme directed at the displacement of

state regulation of employee benefit plans." Hutchinson and Ifshin, *Federal Preemption of State Law Under the Employee Retirement Income Security Act of 1974*, 46 Chicago L. Rev. 23 (1978), (hereinafter referred to as *Hutchinson*). It cannot be seriously questioned that the express preemptive intent and "ERISA's structure, language, and legislative history [4] support a broad interpretation of the scope of federal preemption of state law in this field. . . ." *Hutchinson* at 41. This view is supported by the deemer clause, § 1144 (b) (2) (B). The deemer clause prevents the savings clause from digging a large loophole in the preemption clause through the characterization of benefit plans as insurance by expressly prohibiting such characterization. By it, the Congress made clear that the savings clause was not to be used as a device through which states could regulate employee benefit plans by considering a plan itself to be an insurance company or other insurer.

It is apparent that the funding of a plan by the purchase of insurance does not for that reason trigger the savings clause and permit a state to regulate a plan. It is obviously in furtherance of the declared policies of the Congress to have the plan supported by insurance, and the Congress expressly recognized this in defining an employee benefit plan to include a plan maintained to provide benefits "through the purchase of insurance. . . ." 29 U.S.C.A. § 1002 (1). In prescribing the coverage of ERISA, the Congress designated four types of plans to which its provisions do not apply. Plans funded by insurance are not among those specified exceptions. § 1003. In other words, plans implemented by an insurance contract are within the ambit of ERISA, and the mere existence of an insurance contract funding the plan does not remove it from federal regulation and permit the state to move in.

The purposes to be accomplished by ERISA, the strong preemptive intent of the Congress, the approval of insurance

---

4. For a tracking of the legislative history of ERISA, *see Hutchinson* at 38-43.

implemented plans, and the deemer clause exception to the savings clause, leave little doubt that benefit plans are to be free of direct regulation by the State even if that regulation is part of a general body of insurance law. *Hutchinson* at 65-66. Furthermore, "ERISA makes clear that even indirect state action bearing on private [benefit plans] may encroach upon the area of exclusive federal concern. . . . ERISA's authors clearly meant to preclude the States from avoiding through form the substance of the pre-emption provision." *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. 504, 524, 101 S.Ct. 1895, 1907 (1981). That is, the intent of the Congress is that State law is preempted insofar as its intent, scope, or effect relates primarily or predominately to ERISA-covered plans. In other words, the statutory purpose is best served by the preemption of even indirect State regulations imposing substantive requirements on qualified employee benefit plans "unless the state can show that preemption would interfere significantly with the general state regulation of insurance. . . ." *Hutchinson* at 66. "A state may, for example, indirectly protect an insured employee benefit plan by regulating underwriting and reserve policies of the insurance carrier, even if such regulation affects the cost of the plan. On the other hand, a state should not be allowed to require that an ERISA plan provide a substantive benefit by enforcing an insurance regulation against the insurance carrier that provides the policy to the plan." *Id.* at 66-67. Although it was the clear intent of the Congress not to interfere in the regulation of insurance by the states, we see no intent to extend that policy to permitting state regulation of the terms and conditions of employee benefit plans. *Hutchinson* observes, at 68-69:

> "If states are permitted to require employee benefit plans to provide substantive benefits under the guise of insurance regulation, the result may be a Hobson's choice for employer or labor and management negotiators: either abandon the funding of benefit plans through insurance policies or be willing to accept all-encompassing uniform national contracts. For if each state may impose its

own substantive terms on the plan, the only way uniformity may be reached is by incorporating into the plan all of the benefits each state requires. This dilemma is clearly of the type that Congress sought to avoid by enacting ERISA's preemption provisions, which were formulated to relieve interstate employee benefit plans of the adverse effects of cumulative or inconsistent state regulation."

*See also* Turza and Halloway, *Preemption of State Laws Under the Employee Retirement Income Security Act of 1974,* 28 Catholic U.L. Rev. 163 (1979). We look now at the Maryland statute as it was made applicable below to General Electric's plan.

The Maryland statute is contained among the insurance laws of the State. It requires that every group policy which provides for reimbursement for any service which may be performed lawfully by a qualified social worker shall provide such benefit whether performed by a doctor of medicine or by the social worker if the insured has been referred to the social worker by a physician. Md. Code (1957, 1979 Repl. Vol., 1981 Cum. Supp.) Art. 48A, § 477-O (a). The statute contains no reference to employee benefit plans. It does not establish a new benefit. It merely designates another class of persons which may be reimbursed for services authorized by the policy. As applied to the Metropolitan policy, the statute does not, in the frame of reference of ERISA, regulate insurance. We are persuaded toward this conclusion by the rationale of *Va. Academy of Clinical Psy. v. Blue Shield of Va.,* 624 F.2d 476 (4th Cir. 1980), *cert. denied,* 450 U.S. 916 (1981). In that case, Blue Shield refused to pay for services rendered by clinical psychologists unless such services were billed through physicians. The court observed that "[t]he essence of the business of insurance is the relationship between the insurance company and its policyholder." *Id.* at 483. The policy regarding direct payments was tangential to that relationship in that it did not affect the benefit conferred upon the subscriber. The court said:

"Were we confronted with a decision by the [Blue

Shield] Plans to deny payment for mental and nervous disorders for psychotherapy as a method of treating those disorders we might conclude that the decision was an insurance decision — the refusal to underwrite a specific risk." *Id.* at 484.

The court pointed out that Blue Shield had been covering these mental and nervous disorders in their contracts for some years.

"Their decision regarding psychologists was not whether to underwrite the risk of those disorders or even the need for psychotherapy, rather it was a question of who they would pay for such services. The coverage remained the same." *Id.*

*See Group Life Ins. Co. v. Royal Drug Co.,* 440 U.S. 205, 99 S.Ct. 1067, *reh. denied,* 441 U.S. 917, 99 S.Ct. 2017 (1979); *Eversole v. Metropolitan Life Insurance Co., Inc.,* 500 F. Supp. 1162 (C.D. Cal. 1980).[5]

Having determined that § 477-O (a) of Art. 48A, as applied to the insurance contract here, does not "regulate insurance," we turn to the extent to which it relates to the plan. Of course, the group insurance policy purchased by General Electric from Metropolitan to implement the plan is an integral part thereof, and what relates to it necessarily relates to the plan. We find that the Maryland statute relates to the plan in that it changes a term or condition with regard to the payment of a benefit under the plan. The plan, as it may properly do under federal law, provides for reimbursement for services involving mental or emotional conditions rendered by a physician or psychologist, but not by a social worker. Application of the Maryland law requires that social workers, under conditions prescribed, be

---

5. We are aware that courts in other jurisdictions have reached varying conclusions with respect to whether a statute "regulates insurance." *See,* for example, Wadsworth v. Whaland, 562 F.2d 70 (1st Cir. 1977), *cert. denied,* 435 U.S. 980 (1978), (narrowly construing the ERISA deemer clause); Hewlett-Packard Co. v. Barnes, 425 F. Supp. 1294 (N.D. Cal. 1977), *aff'd,* 571 F.2d 502 (9th Cir.), *cert. denied,* 439 U.S. 831, 99 S. Ct. 108 (1978) (broadly construing the ERISA deemer clause.)

reimbursed for such services. It is of no moment, as we have indicated, that the Maryland law intrudes on the plan indirectly through an insurance law, rather than directly through a statute designated as an employee benefit plan regulation.

The relation of the Maryland law to the day-to-day operation of the plan was graphically demonstrated by evidence presented at the hearing below by Metropolitan through the testimony of a vice-president of Metropolitan, by a member of its controller's staff conversant with insurance benefits, by a member of the faculty of the Medical College of Virginia, who was an expert in the area of health, hospital planning, health economics, and international health systems, and by an expert with respect to the administration of employee benefit plans. Their testimony regarding the impact of the application of the Maryland statute on the plan and the implementing policy was uncontradicted. In essence they opined that the effect on the plan would be drastic, adversely affecting to a substantial degree, costs, administration, uniformity of benefits, processing and payment of claims, and appeal procedures on denial of them. The application of the statute would cause confusion on the part of employees · covered by the plan with respect to their rights, and uncertainty on the part of those administering it. The integrity of the plan would be seriously eroded. In short, the declared policies and the objectives of the Congress in enacting ERISA would be frustrated in large measure. It cannot be seriously argued in the light of this evidence that, at the least, in a practical but very real sense, the Maryland law related to the plan in the contemplation of the preemption clause of ERISA.

There is a further consideration bolstering preemption. The benefits payable under the plan were arrived at by General Electric and its employees through the mechanism of collective bargaining.[6] "As a subject of collective bargaining,

---

6. Metropolitan notes in its brief that its historical policy of providing all employees identical medical expense benefits was so important that it has extended to all of its non-union employees the benefits agreed upon in bargaining sessions by employees represented by unions.

[employee benefit plan] terms themselves become expressions of federal law, requiring preemption of intrusive state law." *Alessi v. Raybestos-Manhattan, Inc.,* 451 U.S. at 524, 101 S.Ct. at 1907.

We find, in the context of ERISA, that to enforce the Maryland statute against Metropolitan is to permit the State to regulate a term and condition of General Electric's employee benefit plan as distinguished from regulating insurance. This is contrary to the intent of the Congress and invokes ERISA's preemption clause. We conclude that Md. Code (1957, 1979 Repl. Vol. 1981 Cum. Supp.) Art. 48A, § 477-O (a) is preempted by federal law insofar as it bears on the General Electric employee benefit plan and its implementing insurance policy issued by the Metropolitan Life Insurance Company. As our conclusion is contrary to that of the Baltimore City Court,[7] the judgment of that court is reversed.

*Judgment reversed.*
*Appellee to pay costs.*

---

7. Upon appeal from the Commissioner to the Baltimore City Court the matter is heard *de novo.* Md. Code (1957, 1979 Repl. Vol.) Art. 48A, § 40 (4). For the scope of the court's review *see* § 40 (5); Frank Lucas Ins. v. Fireman's Fund, 48 Md. App. 122, 125-126, 425 A.2d 1378 (1981). The appeal to the Court of Special Appeals is taken as in civil cases. Art. 48A, § 40 (7). We find that the Baltimore City Court here was wrong as a matter of law.