**1250**

GUARANTEE TRUST LIFE
INSURANCE CO.

v.

Edward M. GAVIN, D.C. d/b/a Gavin
Chiropractic Clinic.

Civ. A. No. 87–98–A.

United States District Court,
M.D. Louisiana.

Jan. 27, 1988.

Kenneth E. Barnette, Dan A. Reed, Seale, Smith & Phelps, Baton Rouge, La., for plaintiff.

Nelson A. Moak, Baton Rouge, La., for defendant.

JOHN V. PARKER, Chief Judge.

This matter is before the court on a motion for summary judgment by the plaintiff, Guarantee Trust Life Insurance Company ("Guarantee"). The defendant has filed a timely opposition. The court finds that there is no need for oral argument. Subject matter jurisdiction is allegedly based upon diversity of citizenship.

The court, after reviewing the motion, requested counsel for both sides to file briefs with regard to the propriety of staying these proceedings pending the outcome of an action before the Louisiana Court of Appeal for the First Circuit entitled "*Chiropractic Association of Louisiana, et al v. State of Louisiana through the Board of Trustees of the State Employees Group Benefits Program,*" CA No. 87–0538. The court has reviewed the briefs filed by the parties, and has carefully considered the matter and concludes that a stay of proceedings would not be appropriate in this action for two reasons: (1) there is little likelihood of a decision before late 1988 and (2) the decision would not necessarily answer the issues before this court. Accordingly, these proceedings will not be stayed

and the court will decide the pending motion for summary judgment.

Guarantee seeks a declaration from this court that a provision of the insurance policy it issued to Louisiana State University, providing health and accident benefits to students does not violate LSA–R.S. 22:668. Defendant, Gavin, a chiropractor, is the assignee of 26 claims from students which he is attempting to assert under the policy of insurance issued by the plaintiff. Defendant has counterclaimed for balances he alleges are due under the insurance policy, and asserts that the plaintiff's refusal to pay these balances under the applicable provision of its policy, violates LSA–R.S. 22:668. Defendant claims penalties and attorney fees for the unpaid balances under LSA–R.S. 22:657.

In this motion for summary judgment by the plaintiff, there are no material facts in dispute; the only issue is one of state law. The question of law is whether the policy as written is in violation of LSA–R.S. 22:668A(1) which provides as follows:

§ 668. **Selection of type of treatment; reimbursement**

A. (1) Notwithstanding any provision of any policy or contract of insurance or health benefits issued after the effective date of this Section, whenever such policy or contract provides for payment or reimbursement for any service, and such service may be legally performed by a chiropractor licensed in this state, such payment or reimbursement under such policy or contract shall not be denied when such service is rendered by a person so licensed. Terminology in such policy or contract deemed discriminatory against any such person or method of practice shall be avoided.

Guarantee's policy held by Louisiana State University in Baton Rouge, provides coverage for:

Out patient treatment in connection with the detection or correction by manual or mechanical means of structural imbalance, distortion, or subluxation in the human body for purposes of removing nerve interference as a result of or related to distortion, misalignment, or sublux-ation of or in the vertebral column, with the following limitations:

We will pay eighty percent (80%) of eligible expenses incurred. The said expenses will not exceed $100.00 for any Insured Person per calendar month.

Plaintiff basically argues that the above provision of its health and accident policy does not discriminate against chiropractors on its face or in its effect. Plaintiff argues that the clear and unambiguous language of LSA–R.S. 22:668A(1) is that the insurer cannot deny payments for medical services solely because the service is performed by a chiropractor. Plaintiff maintains that its policy merely limits payment for the listed services regardless of who performs the services—physical therapist, medical doctor or doctor of chiropractic. In support of its motion, plaintiff submits the affidavit of its vice-president, Fred Weeks, identifying the health and accident policy issued to Louisiana State University, and a letter approving the policy by the Louisiana Insurance Commissioner.

Defendant argues that even though the policy provision on its face appears non-discriminatory, in practice and effect, the policy language limits payments only to chiropractors; that the plaintiff, by describing what a chiropractor does, has sought to accomplish indirectly, what is proscribed by LSA–R.S. 22:668. Therefore, the provision discriminates against chiropractors in violation of Louisiana law. First, defendant submits, accompanied by the affidavit of the defendant's attorney, the minutes of the L.S.U. System-wide Committee for Student Accident and Health Insurance meeting held March 14, 1984. The minutes state that Item No. 10 (the policy language in dispute) is to be added to "limit chiropractic treatment." Second, defendant argues that the provision discriminates in effect against chiropractors. In support of this contention, defendant offers the affidavits of two chiropractors, W.C. Edwards and Claude C. Stevens, which state that the policy language at issue, effectively restricts no other method of care except chiropractic. Defendant also submits the affidavits of Donald B. Richardson, a self-pro-

claimed "expert" in the field of insurance, who states that the policy language in question here is a "prime example" of an attempt to restrict coverage of chiropractic care. The affidavit, however, fails to list the insurance expert's training and experience; therefore, there is no factual basis for his knowledge on this subject. Defendant has also included an affidavit of an osteopath, Ted. B. Thompson, which states that the policy's language would not restrict his method of treating patients. Third, defendant maintains that the limiting policy language tracks the chiropractor enabling statute, LSA–R.S. 37:2801(3).

LSA–R.S. 37:2801(3) provides:

§ 2801. **Definitions**

(3) "Practice of chiropractic" means the holding out of one's self to the public as a chiropractor and as being engaged in the business of, or the actual engagement in, the diagnosing of conditions associated with the functional integrity of the spine and treating by adjustment, manipulation, and the use of the physical and other properties of heat, light, water, electricity, sound, massage, therapeutic exercise, mobilization, mechanical devices, and other physical rehabilitation measures for the purpose of correcting interference with normal nerve transmission and expression. A chiropractor may also make recommendations relative to personal hygiene and proper nutritional practices for the rehabilitation of the patient. The practice of chiropractic does not include the right to prescribe, dispense, or administer medicine or drugs, or to engage in the practice of major or minor surgery, obstetrics, acupuncture, x-ray therapy, or engage in computerized axial tomography, nuclear magnetic resonance, nuclear magnetic imaging, or nuclear medicine.

■ Relying upon the statutory language, defendant argues that the policy only limits chiropractic care and not merely certain kinds of treatment which can be performed by different health care providers. Defendant supports his argument with several other documents. Defendant has submitted two letters from the Louisiana Commissioner of Insurance, entitled "Directive Number 73" and "Supplemental to Directive Number 73." These letters, however, are not certified or accompanied by affidavit and thus cannot be considered.

Defendant also offers a certified copy of the decision of the Louisiana district judge in *Chiropractic Ass'n of La. v. State of La.*, supra, which is now on appeal to the Louisiana Court of Appeal. The defendant in brief, argues that the state district court held that language in the State Employees Group Benefits Plan, which he asserts is exactly the same as the language at issue in this case, was in violation of LSA–R.S. 22:668. The certified copy of the state court opinion, however, does not identify the policy language which it held was in violation of Section 668. Finally, defendant argues that since Louisiana State University is an agency of the state, the policy also violates LSA–R.S. 40:1299.65, which provides that no agency of the state shall deny to the recipients or beneficiaries of their aid, the freedom to choose a duly licensed chiropractor to perform services which are within the scope of the practice of chiropractic.

Because this is a diversity case, an *Erie* bound federal court must look to Louisiana law governing the interpretation of insurance contracts and cases interpreting LSA–R.S. 22:668A(1). The court has found no reported case which discusses or interprets that section, or construes contractual language in light of its provisions. The court must, therefore, rely on Louisiana statutes and cases governing interpretation of contracts and general principles of statutory construction as set out in the Louisiana Civil Code.[1]

---

1. The following articles generally govern statutory construction:

Art. 13. When a law is clear and free from all ambiguity, the letter of it is not to be disregarded, under the pretext of pursuing its spirit.

Art. 14. The words of a law are generally to be understood in their most usual signification, without attending so much to the niceties of grammar rules as to the general and popular use of the words.

Turning to the policy provision, it clearly establishes limitations as to the amount which will be paid for the services described—eighty percent "of eligible expenses incurred," limited to $100 per month for any insured person. Section 668 provides that whenever a policy provides for payment for any service which may legally be performed by a chiropractor, payment shall not be denied "when such service is rendered" by a chiropractor. While the statute can be termed ambiguous, its obvious purpose is to require that insurance policies which provide payment for medical services when those services are performed by a medical doctor (or some other medical professional) must also provide for payment to chiropractors when the same service is performed by a chiropractor. As we have seen, LSA–R.S. 37:2801(3) defines the practice of chiropractic as, "the diagnosing of conditions associated with the functional integrity of the spine and treating by adjustment, manipulation, and the use of the physical and other properties of heat, light, water, electricity, sound, massage, therapeutic exercise, mobilization, mechanical devices, and other physical rehabilitation measures for the purpose of correcting interference with normal nerve transmission and expression." The policy at issue covers, but limits payment for "treatment in connection with the detection or correction by manual or mechanical means of structural imbalance, distortion or subluxation in the human body for purposes of removing nerve interference as a result of or related to distortion, misalignment or subluxation of or in the vertebral column."

The policy provides for payment to any health care provider who provides the services described, chiropractor or otherwise. All payment for such services will be paid at the same rate, without regard to the identity of the provider: eighty percent of "eligible expenses incurred," not to "exceed $100 for any Insured Person per calender month." Defendant argues that only chiropractors provide such services and hence the facial non-discrimination is actually discriminatory. No credible evidence has been presented to the court that only chiropractors provide the services described in the policy, but assuming that to be so, Section 668 A(1) does not mandate full payment under the policy. The statute applies only to a policy which "provides for payment or reimbursement for any service" which may legally be performed by a chiropractor. The policy in question does not provide for **full payment** of such services, it limits the amount which will be paid for such service.

According to the policy, the premium is $170 per annum for a student. Not surprisingly the policy limits the amount which will be paid for many covered benefits: maternity has a schedule of benefits and an overall limit of $1200; hospital room and board is limited to $75 per day; ambulance service is limited to $75 per trip; out-patient mental and nervous disorders are covered only for emergency hospital treatment and limited to $100; psychotherapy treatment contains a $50 deductible and is limited to $50 per visit and a maximum of 10 visits; all covered expenses are limited to the "usual, reasonable and customary expense for services;" and there is a limit of $1000 in the aggregate for all expenses relating to any one covered accident or sickness.

Under Louisiana law, it is well-settled that insurers may limit their liability and may impose reasonable conditions upon their obligations, so long as they use unambiguous and clearly noticeable provisions and the limitation or condition does not conflict with statutory law or public policy. See *Scarborough v. Travelers Ins. Co.,* 718

Art. 15. Terms of art or technical terms and phrases, are to be interpreted according to their received meaning and acceptation with the learned in the art, trade or profession to which they refer.
Art. 16. Where the words of a law are dubious, their meaning may be sought by examining the context with which the ambiguous words, phrases and sentences may be compared, in order to ascertain their true meaning.
Art. 18. The universal and most effectual way of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the Legislature to enact it.

F.2d 702 (5th Cir.1983); *Stacy v. Petty*, 362 So.2d 810, 814 (La.App. 3d Cir.1978).

■ Defendant misreads the statute. Section 668 A(1) does not require that chiropractic services be covered; it simply provides that if the policy covers a service which may legally be performed by a chiropractor, then payment for such service shall not be denied if performed by a chiropractor. The statute at least implies that chiropractors and other health care providers do perform at least some of the same services, but it does not impose a limitation upon the insurer's well established right to provide policy limits. Although the question is not before us, at least arguably the insurer could exclude all chiropractic services (without regard to who performs the service) without offending the statute since it applies only when "such policy or contract provides for payment" of a service which may legally be performed by a chiropractor. Whatever the intent of the University in mandating the policy language, this policy does not exclude payment for chiropractic services; on the contrary, it specifically covers such services, but limits the amount which will be paid for them, just as it limits the amounts which will be paid for other covered services. Considering the amount of the premium, such limitations are to be expected.

Deductibles, "co-insurance" provisions, provisions for payment of less than 100% for services, and over all caps are familiar ingredients of modern health care insurance. This court can find no provision of Section 688A(1) indicating a legislative intent to proscribe the contracting authority of an insurer with regard to imposing such limitations on payment for chiropractic services.

The last sentence of the statute, "Terminology in such policy or contract deemed discriminatory against any such person or method of practice shall be void," is, in the language of Article 16, truly "dubious." As directed by Article 16, however, when comparing the dubious last sentence to the rest of Section 668A(1) the meaning which can be ascertained is: If a policy provides for payment for a service which a chiro-

practor may legally perform when that service is performed by some other health care providor, but denies payment when the service is performed by a chiropractor, then the "discriminatory" provision shall be void. This policy contains no such discriminatory provision. The policy clearly covers at least some services which may legally be performed by chiropractors in Louisiana. If the services described in the policy are performed, whether by chiropractors or other health care providers, the policy provides for payment for such services, **up to and within the limits set forth in the policy.**

This policy does not violate any provision of LSA–R.S. 22:668A(1) and the defendant is entitled to payment only in accordance with the terms, limits and provisions of the policy. It is undisputed that he has already been paid in accordance with the policy limits.

Defendant's argument that the policy provision offends LSA–R.S. 40:1299.65 fares no better. That statute provides:

**1299.65**

No agency of the state, parish or municipality, under the laws of the state of Louisiana, shall deny to the recipients or beneficiaries of their aid or services the freedom to choose a duly licensed chiropractor as the provider of care or services which are within the scope of practice of the profession of chiropractic as defined in R.S. 37:2801(3).

■ The undisputed facts do show that the University prepared its own specifications for the group policy and thus it may be argued that, if the policy denies freedom to choose a chiropractor (by denying payment for his services), it is the University which is the actor and thus as an "agency" of the state, violates Section 1299.65. Assuming that argument is correct, the policy language contains no such denial. All insureds are free to choose chiropractic; the policy simply limits the amount which will be paid for those services, just as it limits the amounts which will be paid for other medical services.

For the foregoing reasons, the motion for summary judgment on behalf of plain-

tiff is hereby GRANTED and there will be judgment in favor of plaintiff as prayed for.