James **TAYLOR**, et al.

v.

**BLUE CROSS/BLUE SHIELD OF NEW YORK.**

Civ. A. No. 87–5809.

United States District Court, E.D. Louisiana.

March 23, 1988.

James B. Guest, Michael A. Broussard, Guest & Hand, Kenner, La., for plaintiffs.

Matthew J. Ungarino, Hulse, Nelson & Wanek, New Orleans, La., for defendant.

## ORDER AND REASONS

CHARLES SCHWARTZ, Jr., District Judge.

This matter is before the Court on defendant's motion to dismiss plaintiffs' complaint for failure to state a claim upon which relief can be granted or alternatively for summary judgment. For the following reasons, the Court grants the motion.

This matter concerns ERISA,[1] Louisiana's mandatory-provider insurance statute for chiropractors, and insurance policies that exclude coverage for chiropractic services. Today, the Court holds (1) that insurers of employee benefit plans covered by ERISA are not subject to La.R.S. 22:657 and (2) that insurers may exclude coverage for chiropractic services without violating either La.R.S. 22:668 or ERISA; the Court leaves for another day the issue of whether ERISA preempts La.R.S. 22:668.

### I.

Plaintiffs' complaint as amended alleges the following: (1) plaintiff James Taylor went to plaintiff Berman Chiropractic Clinic for chiropractic treatment and services, (2) defendant Blue Cross is the group health insurer for Mr. Taylor's employer, Alsthom, Inc., and is "an insurance company and/or health care service corporation which sells insurance policies," (3) defendant's policy with Alsthom covers Berman's treatment and services to Mr. Taylor, (4) despite amicable demands, defendant has refused to pay the $1,230 Mr. Taylor seeks for Berman's bills, and (5) Mr. Taylor has assigned his claims against Blue Cross to Berman.

Mr. Taylor and the Berman Clinic joined as plaintiffs in Louisiana state court to sue Blue Cross for the $1,230 along with attorney's fees and a 100% penalty under La.R.S. 22:657. They allege two causes of action: (1) a wrongful-delay-in-making-insurance-payments in violation of La.R.S. 22:657, which claim depends on (2) a breach-of-policy in violation of La.R.S. 22:668.

Under the authority of two Supreme Court cases decided last term, *Metropolitan Life Insurance Co. v. Taylor*[2] and *Pilot Life Insurance Co. v. Dedeaux*,[3] defendant petitioned this Court for removal of this matter under 28 U.S.C. § 1441.

Defendant has not answered the complaint, but instead now moves to dismiss it for failure to state a cause of action upon which relief may be granted or alternatively for summary judgment. To support its motion, defendant argues two reasons for its refusal to pay: (1) ERISA preempts plaintiffs' claims and (2) the policy with Alsthom clearly and specifically excludes coverage for chiropractic services.[4]

### II.

ERISA is a "massive undertaking" that comprehensively regulates, among other things, employee welfare benefit plans that, "through the purchase of insurance or otherwise," provide medical, surgical, or hospital care or benefits in the event of

---

1. Employee Retirement Income Security Act of 1974, 88 Stat. 829, as amended, 29 U.S.C. §§ 1001–1461.

2. —— U.S. ——, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

3. —— U.S. ——, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

4. Section O.(7) of the policy provides as follows:

O. **Limitations and Exclusions Applicable to Medical and Major Medical Coverage**

No benefits are available under the medical or major medical portions of this contract for any of the following services:

. . .

7. **Physical Manipulation Services:** Manipulation of the spine and other parts of the body to eliminate nerve interference or its effects. This includes any manual or mechanical means including X-rays or prosthetic appliances to detect or correct body imbalances, distortions or subluxations related to the spine or other parts of the body.

*See also* La.Rev.Stat.Ann. 37:2801(3) (West Supp.1988) (defining "practice of chiropractic").

sickness, accident, disability, or death.[5]

Three clauses regulate ERISA's general preemptive effect over state law: the preemption clause,[6] the saving clause,[7] and the deemer clause.[8] The mechanics of these three clauses have been summarized as follows: if a state law "relate[s] to any employee benefit plan," it is preempted by the preemption clause; the saving clause excepts from the preemption clause those laws that "regulat[e] insurance"; and the deemer clause makes it clear that a state law that "purport[s] to regulate insurance" cannot deem an employee benefit plan to be an insurance company.[9]

A recent Supreme Court trilogy has addressed the effect of ERISA on state law actions such as this one.

First in the trilogy is Justice Blackmun's unanimous opinion *Metropolitan Life Insurance Co. v. Massachusetts.*[10] In that case, the Massachusetts Attorney General sought to enforce against an insurer a state statute that mandates specified minimum health-care benefits to be provided to persons insured under, among other policies, employee health care plans.[11] At issue was whether ERISA preempts the statute. The Court held that the state statute is a "law which regulates insurance" within the meaning of ERISA's savings clause and thus is not preempted by ERISA.[12]

Upon noting, as all parties conceded, that the Massachusetts statute "clearly 'relate[s] to' pension plans governed by ERISA so as to fall within the reach of ERISA's pre-emption provision,"[13] the Court discussed why ERISA does not preempt this statute. The Court first stated the "obvious ... common-sense view" that the statute regulates the terms of certain insurance contracts.[14] It then added that any distinction between "traditional" and "innovative" insurance laws is irrelevant inasmuch as ERISA's saving and deemer clauses make no such distinctions.[15] It further noted that the statute satisfies the three established criteria for determining whether a particular practice falls within the reference in the McCarran–Ferguson Act[16] to the "business of insurance": "*first,* whether the practice has the effect of transferring or spreading a policyholder's risk; *second,* whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third,* whether the practice is limited to entities within the insurance industry."[17] It found no "contrary case authority sug-

---

**5.** *Pilot Life Insurance Co. v. Dedeaux,* — U.S. —, —, 107 S.Ct. 1549, 1551, 95 L.Ed.2d 39 (1987) (citing ERISA § 3(1), 29 U.S.C. § 1002(1)).

**6.** ERISA § 514(a), 29 U.S.C. § 1144(a) ("Except as provided in subsection (b) of this section [the saving clause], the provisions of this subchapter and subchapter III of this chapter [29 U.S.C. §§ 1001–1145, 1301–1461] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan....").

**7.** *Id.* § 514(b)(2)(A), 29 U.S.C. § 1144(b)(2)(A) ("Except as provided in subparagraph (b) [the deemer clause], nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance....").

**8.** *Id.* § 514(b)(2)(B), 29 U.S.C. § 1144(b)(2)(B) ("Neither an employee benefit plan ... nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer ... or to be engaged in the business of insurance ... for purposes of any law of any State purporting to regulate insurance companies [or] insurance contracts....").

**9.** *Pilot Life,* — U.S. at —, 107 S.Ct. at 1552.

**10.** 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985).

**11.** *Id.* at 727, 105 S.Ct. at 2383.

**12.** *Id.* at 758, 105 S.Ct. at 2399.

**13.** *Id.* at 739, 105 S.Ct. at 2389.

**14.** *Id.* at 740, 105 S.Ct. at 2390.

**15.** *See id.* at 741–42, 105 S.Ct. at 2390–91.

**16.** 59 Stat. 33 (1945), as amended, 15 U.S.C. §§ 1011–1015 (1982). The Act reads in pertinent part as follows: "The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business." 15 U.S.C. § 1012(a).

**17.** 471 U.S. at 743, 105 S.Ct. at 2391 (citing *Union Labor Life Insurance Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3008, 73 L.Ed.2d 647 (1982)) (emphasis from *Union Labor*).

gesting that laws regulating the terms of insurance contracts should *not* be understood as laws that regulate insurance." [18] In concluding, it observed that nothing in the scant legislative history on the saving clause suggests otherwise.[19]

Next in the trilogy is Justice O'Connor's unanimous opinion *Pilot Life Insurance Co. v. Dedeaux.* [20] In *Pilot Life,* an employee brought a common-law bad-faith tort action for the misprocessing of benefit claims by the insurer under his ERISA-covered employee benefit plan. The Court held this general common law preempted by ERISA.

In reaffirming the standard from *Metropolitan Life,* the Court noted that to be a law that regulates insurance, the "law must not just have an impact on the insurance industry, but be specifically directed toward that industry." [21] The Court found that the state law in question meets "at most" only one of the three McCarran–Ferguson criteria outlined in *Metropolitan Life.*[22]

"Finally, and most important, the Court justified a narrower view of the saving clause by looking at the ERISA statute as a whole." [23] The Court noted that the state law asserted recognizes punitive damages,[24] while ERISA's civil enforcement provisions,[25] like its breach-of-fiduciary-duty provision,[26] recognize no express or implied cause of action for punitive damages.[27] ERISA's civil enforcement provisions, it concluded, were intended to be exclusive.[28] In distinguishing *Metropolitan Life,* the Court noted: "*Metropolitan Life,* however, did not involve a state law that conflicted with a substantive provision of ERISA." [29]

It is clear that *Pilot Life* does not purport, and should not be read, to overrule *Metropolitan Life v. Massachusetts.* Rather, *Pilot Life* distinguishes, and to a large extent bases its holding on, the earlier case. Both cases apply the same basic test for determining if a state law is preempted by ERISA or not: whether the law solely concerns the business of insurance and whether the law conflicts with any of ERISA's substantive provisions.[30] In sum, the two cases illustrate what the text of ERISA makes obvious: some state laws are preempted by ERISA and others are not.

Last in the trilogy is Justice O'Connor's opinion *Metropolitan Life Insurance Co. v. Taylor,*[31] decided the same day as *Pilot Life.* In *Taylor,* the issue was not whether

---

**18.** *Id.* at 744, 105 S.Ct. at 2391 (emphasis in original); *see also id.* at 742 n. 18, 105 S.Ct. at 2390 n. 18.

**19.** *Id.* at 745–46, 105 S.Ct. at 2392–93.

**20.** —— U.S. ——, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

**21.** *Id.* at ——, 107 S.Ct. at 1554.

**22.** *Id.* at —— – ——, 107 S.Ct. at 1554–55.

**23.** *Roberson v. Equitable Life Assurance Society of the United States,* 661 F.Supp. 416, 421 (C.D. Cal.1987) (footnote omitted); *see Pilot Life,* —— U.S. at ——, 107 S.Ct. at 1558 ("Considering . . ., most importantly, the clear expression of congressional intent that ERISA's civil enforcement scheme be exclusive").

**24.** —— U.S. at ——, 107 S.Ct. at 1554.

**25.** ERISA § 502(a), 29 U.S.C. § 1132(a).

**26.** *Id.* § 409(a), 29 U.S.C. § 1109(a); *see Massachusetts Mutual Life Insurance Co. v. Russell,*

473 U.S. 134, 147–48, 105 S.Ct. 3085, 3093–94, 87 L.Ed.2d 96 (1985).

**27.** —— U.S. at ——, 107 S.Ct. at 1556; *see Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.,* 793 F.2d 1456, 1462–65 (5th Cir.1986), *certs. denied,* —— U.S. ——, 107 S.Ct. 884, 93 L.Ed.2d 837 and —— U.S. ——, 107 S.Ct. 1298, 94 L.Ed.2d 154 (1987).

**28.** —— U.S. at ——, 107 S.Ct. at 1557.

**29.** *Id.* at ——, 107 S.Ct. at 1558.

**30.** *See General Motors Corp. v. California State Board of Equalization,* 824 F.2d 816 (9th Cir. 1987) (characterizing the preemption issue as a two-part test: whether the law at issue is one of general application or one directed specifically at the insurance industry, and whether the law conflicts or not with any of ERISA's substantive provisions), *denying petition for rehearing from* 815 F.2d 1305 (9th Cir.1987) (Kennedy, J.), *cert. denied sub nom. General Motors Corp. v. Bennett,* —— U.S. ——, 108 S.Ct. 1122, 99 L.Ed.2d 282 (1988).

**31.** —— U.S. ——, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

a certain state law—in that case, general state contract and tort common law—was preempted by ERISA, but whether a concededly preempted state law cause of action for misprocessing benefit claims could be removed to federal court by virtue of ERISA. This issue was left open from Justice Brennan's unanimous opinion *Franchise Tax Board v. Construction Laborers Vacation Trust*,[32] which held that ERISA preemption, without more, does not convert a state claim into an action arising under federal law (i.e., that ERISA does not always displace those state laws it preempts).[33]

The state claims in *Franchise Tax Board* did not come within ERISA's civil enforcement provisions, while the state claims in *Taylor* did.[34] This change made all the difference. The Court in *Taylor* held that an employee claim preempted by ERISA's civil enforcement provisions (specifically, the one for recovery and enforcement of benefits to an employee[35]) was also displaced thereby and thus may be removed to federal court under the general "well-pleaded complaint" rule[36] of 28 U.S.C. § 1441(b). In other words, it held that complaints filed in state court purporting to plead state law causes of action only (and not purporting to plead any federal question) are nonetheless properly removable to federal court whenever the state law is preempted by ERISA's civil enforcement provisions.

### III.

The first issue for the Court to decide is the effect of ERISA on La.R.S. 22:657 and 22:668.[37] On the one hand, if ERISA preempts and displaces either statute, then this Court has subject matter jurisdiction over the entire matter under 28 U.S.C. §§ 1331 and 1441 by virtue of the holding in *Taylor*[38] and may decide the merits of defendant's motion. On the other hand, if these ERISA provisions do not preempt and displace either statute,[39] then no federal question arises under plaintiffs' complaint and the Court must remand the matter under 28 U.S.C. § 1447(c) for lack of subject matter jurisdiction and must leave the merits of plaintiffs' causes of action to the state court.[40] As explained below, the Court holds that ERISA preempts and displaces La.R.S. 22:657 and thus that this Court has subject matter jurisdiction.

---

**32.** 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

**33.** *Taylor,* —— U.S. at ——, 107 S.Ct. at 1547 (citing *Franchise Tax Board,* 463 U.S. at 25–27, 103 S.Ct. at 2854–56).

**34.** *Id.* at ——, 107 S.Ct. at 1547 (citing *Franchise Tax Board,* 463 U.S. at 24–25, 103 S.Ct. at 2854–55).

**35.** ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought ... by a participant or beneficiary ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.").

**36.** *See Louisville & Nashville Railroad Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

**37.** Implicit to both parties is the finding that these two laws as applied here "relate[ ] to [Alsthom's] employee benefit plan" within the broad meaning of ERISA's preemption clause. "[N]ot[ing] the expansive sweep of the pre-emption clause," the Court concurs in this finding. *Pilot Life,* —— U.S. at ——, 107 S.Ct. at 1553 (citing *Metropolitan Life v. Massachusetts,* 471 U.S. at 739, 105 S.Ct. at 2389 and *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–100, 103 S.Ct. 2890, 2899–901, 77 L.Ed.2d 490 (1983)).

**38.** If ERISA preempts one statute but not the other, then this Court has federal subject matter jurisdiction over the cause of action on the preempted statute by virtue of *Taylor* and over the cause of action on the non-preempted statute by virtue of pendent jurisdiction. *See also infra* text accompanying notes 64–65.

**39.** For ERISA not to preempt and displace either statute, each statute must either (1) be preempted but not displaced by ERISA under the *Franchise Tax Board/Taylor* rule (i.e., not be preempted by ERISA's civil enforcement provisions) or (2) come within ERISA's saving clause.

**40.** *See Lessard v. Metropolitan Life Insurance Co.,* 618 F.Supp. 1268, 1274 (D.Me.1985); *cf. Woodfork v. Marine Cooks & Stewards Union,* 642 F.2d 966, 971 (5th Cir.1981) (ordering dismissal of action brought in federal court and in which no federal question arose under ERISA). While the parties are diverse, the amount in controversy is way below $10,000. Thus, the Court lacks diversity jurisdiction over this matter.

The second issue is whether defendant's policy violates the law applicable to this case. The Court need not determine whether ERISA preempts and displaces La. R.S. 22:668, for the outcome in this matter is the same either way. Because defendant has introduced sufficient undisputed material evidence of no violation of either ERISA or La.R.S. 22:668, the Court grants summary judgment to defendant.

### A.

■ The issue of ERISA's effect on La. R.S. 22:657 is one of "statutory complexity." [41] A recent opinion from the Central District of California, however, has proved very instructive and persuasive on the issue. In *Roberson v. Equitable Life Assurance Society of the United States*,[42] the court held a California statute similar to § 657 to be preempted by ERISA.

The appropriate starting point for determining whether ERISA preempts and displaces the statute is, of course, the text of the statute. La.R.S. 22:657 reads in pertinent part as follows:

A. All claims arising under the terms of health and accident contracts issued in this state ... shall be paid not more than thirty days from the date upon which written notice and proof of claim, in the form required by the terms of the policy, are furnished to the insurer unless just and reasonable grounds, such as would put a reasonable and prudent business man on his guard, exist. The insurer shall make payment at least every thirty days to the assured during that part of the period of his disability covered by the

policy or contract of insurance during which the insured is entitled to such payments. Failure to comply with the provisions of this Section shall subject the insurer to a penalty payment to the insured of double the amount of the health and accident benefits due under the terms of the policy or contract during the period of delay, together with attorney's fees to be determined by the court. The district court of the parish where the insured lives or has his domicile shall have jurisdiction to try such cases.

Only one other court appears to have considered the effect of ERISA on § 657.[43] Because the issue is an important and complex one, which neither party addressed, and because the other court did not discuss the issue in any detail, this Court addresses the issue.

La.R.S. 22:657 falls in between the two extremes defined by *Metropolitan Life v. Massachusetts* and *Pilot Life;* it bears similarities and differences to both state laws at issue in those two cases. On the one hand, § 657 is unlike the state common law preempted and displaced in *Pilot Life*, for it is a statute specifically directed toward the insurance industry.[44] On the other hand, it is unlike the Massachusetts statute "saved" in *Metropolitan Life*, for it is not a "content regulation" [45] but rather a procedural regulation with remedies different from ERISA's.

"The most persuasive argument in support of saving [La.R.S. 22:657] is its obvious connection to regulating insurance." [46] The statute appears in Title 22 of the Louisiana Revised Statutes, which is Louisi-

---

**41.** *Pilot Life,* —— U.S. at ——, 107 S.Ct. at 1553 (citing *Metropolitan Life v. Massachusetts,* 471 U.S. at 740, 105 S.Ct. at 2389).

**42.** 661 F.Supp. 416 (C.D.Cal.1987) (concerning Cal.Ins.Code § 790.03(h) which provides for, among other things, punitive damages for certain unfair claims settlement practices by insurers).

**43.** *Rasmussen v. Metropolitan Life Insurance Co.,* 675 F.Supp. 1497, 1504–05 (W.D.La.1987). This Court has previously been asked whether ERISA preempts § 657; because the Court disposed of that matter before it had to address this issue, the Court remained silent on the

issue. *See Children's Hospital v. Whitcomb,* Civil Action No. 84–4781, slip op. at 6 n. 8 (E.D.La. Jan. 10, 1985) (Schwartz, J.), *aff'd,* 778 F.2d 239 (5th Cir.1985).

**44.** *See Killebrew v. Abbott Laboratories,* 352 So. 2d 332, 335 (La.App. 4th Cir.1977) ("the provisions of LSA–R.S. 22:657 apply only to commercial insurers which are subject to regulation by the Commissioner of Insurance"), *aff'd,* 359 So. 2d 1275, 1278 (La.1978). In 1979, the statute was amended to apply to self-insurers as well.

**45.** *Roberson,* 661 F.Supp. at 419.

**46.** *Id.* at 422.

ana's Insurance Code, and its very terms concern "health and accident contracts." It would "strain logic to argue" that the statute does not satisfy the initial "common-sense" test met in *Metropolitan Life* and failed in *Pilot Life*.[47] Indeed, § 657 "at least meets the third factor of the McCarran–Ferguson test in that it is directed to those persons and entities 'engaged in the business of insurance.'"[48]

The statute, however, does not satisfy either of the first two factors of the McCarran–Ferguson test. In contrast to the Massachusetts statute in *Metropolitan Life*, § 657 "does not define the terms of the relationship between the insurer and the insured; it declares only that, whatever terms have been agreed upon in the insurance contract, a breach of that contract may in certain circumstances allow the policyholder to obtain [penalties and attorney's fees]."[49] In further contrast to the Massachusetts statute, § 657 has no effect in transferring or spreading policyholder risks; instead of regulating the substantive terms or content of insurance policies,

§ 657 "primarily is aimed at the procedural aspect of processing and settling claims."[50]

Further, the remedy available under § 657 for an insurer's misprocessing of claims conflicts with ERISA's civil enforcement remedies, which Congress intended and the Supreme Court has stated to be exclusive for all actions relating to employee benefit plans under ERISA.[51] First, whereas attorney's fees under ERISA are within the court's discretionary power to allow or deny in an employee's action to recover plan benefits,[52] they are mandatory under § 657 whenever an insurer violates the statute.[53] Second, whereas ERISA does not recognize punitive damages,[54] § 657 likewise specifically mandates punitive damages in the form of a 100% penalty, which is penal in nature,[55] whenever an insurer violates the statute.[56] Finally, § 657 does not provide the panoply of other remedies available under ERISA.

Moreover, the provisions in § 657 defining what amounts to a misprocessing of claims so as to subject an insurer to the

47. *See id.* (citing *Pilot Life,* —— U.S. at ——, 107 S.Ct. at 1554).

48. *Id.*

49. *Pilot Life,* —— U.S. at ——, 107 S.Ct. at 1555; *see also Roberson,* 661 F.Supp. at 422; *cf. Metropolitan Life v. Massachusetts,* 471 U.S. at 728 n. 2, 105 S.Ct. at 2383 n. 2 (distinguishing insurance laws regulating claims practices from those regulating the content of policies). While Louisiana public policy forbids an insurer from contracting away the insured's remedies under § 657, *Lopez v. Blue Cross of Louisiana,* 397 So.2d 1343, 1345 (La.1981), this restriction on what an insurer may include in its policies cannot be considered the type of practice to which the first McCarran–Ferguson factor is intended to refer; otherwise, the saving clause would subsume the preemption clause and laws such as the bad-faith common law preempted in *Pilot Life* could be deemed "laws regulating insurance."

50. *Roberson,* 661 F.Supp. at 422; *Lopez,* 397 So.2d at 1345 ("The statute was evidently enacted to effect a speedy collection of just claims without diminution and without unnecessary delay and expenses.").

51. *Rasmussen v. Metropolitan Life Insurance Co.,* 675 F.Supp. 1497, 1504–05 (W.D.La.1987); *see Pilot Life,* —— U.S. at ——, 107 S.Ct. at 1556.

52. ERISA § 502(g)(1), 29 U.S.C. § 1132(g)(1); *see Pilot Life,* —— U.S. at ——, 107 S.Ct. at 1556; *Iron Workers Local No. 272 v. Bowen,* 624 F.2d 1255, 1265–66 (5th Cir.1980) (attorney's fees under ERISA are discretionary and should not be construed as virtually mandatory).

53. *E.g., Boudreaux v. Fireman's Fund Insurance Co.,* 654 F.2d 447, 451 (5th Cir.1981) ("An unreasonable denial *will* result in a sanction in the form of an award of attorney's fees and assessment of a penalty." (emphasis added)).

54. *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.,* 793 F.2d 1456, 1462–65 (5th Cir.1986), *certs. denied,* —— U.S. ——, 107 S.Ct. 884, 93 L.Ed.2d 837 and —— U.S. ——, 107 S.Ct. 1298, 94 L.Ed.2d 154 (1987); *see Pilot Life,* —— U.S. at ——, 107 S.Ct. at 1556. ERISA provides civil penalties for certain transactions between a plan and its fiduciaries or other parties of interest, but only the Secretary of Labor may seek and assess them. *See* ERISA § 502(i), 29 U.S.C. § 1132(i).

55. *E.g., Posey v. Board of Trustees, State Employees Group Benefits Program,* 426 So.2d 705, 708–09 (La.App. 1st Cir.1982), *writ denied,* 429 So.2d 139 (La.1983); *cf. Hart v. Allstate Insurance Co.,* 437 So.2d 823, 827 (La.1983) (same for penalties under La.R.S. 22:658).

56. *See supra* note 53.

section's remedy of attorney's fees and a penalty conflict and overlap with certain regulations under ERISA's notice provisions.[57] Also, whereas the standard of review under § 657 for a denial of benefits is one of "just and reasonable" excuse,[58] the standard under ERISA is one of "arbitrary and capricious" grounds.[59] "Preemption ensures that the administrative practices of [Alsthom's] benefit plan will be governed only by a single set of regulations," [60] namely, federal regulations.

In sum, the Court finds that La.R.S. 22:657 satisfies only one of the three McCarran–Ferguson factors and conflicts with various substantive provisions in ERISA. Thus, the statute is not saved from preemption under ERISA, for it is not a "law of any State which regulates insurance" within the meaning of ERISA's saving clause. While a state law could satisfy the McCarran–Ferguson test, and perforce then the initial common-sense test, but still conflict with ERISA's civil enforcement provisions,[61] the Court need not determine whether such a law comes within ERISA's saving clause. Further, the Court need not determine whether ERISA's saving clause applies to a state law that does not conflict with any of ERISA's substantive provisions but that satisfies only one or two of the three McCarran–Ferguson factors.

■ Because La.R.S. 22:657 is preempted by ERISA and displaced by ERISA's civil enforcement provisions, this Court has federal-question subject matter jurisdiction over plaintiffs' cause of action that purports in their complaint to depend solely on state law, specifically, their purported claim of wrongful delay and misprocessing of insurance benefits under § 657. In essence, the Court must treat plaintiffs' claims asserted under § 657 as being a cause of action under ERISA's civil enforcement provision for plan beneficiaries and participants.[62] Accordingly, removal of this matter from state court was proper under 28 U.S.C. § 1441.

Because the outcome of this matter, as shown in Part III(B) below, is the same whether or not ERISA preempts § 668, the Court need not determine whether ERISA preempts § 668.[63] On the one hand, if

---

**57.** See ERISA § 503, 29 U.S.C. § 1133 (providing that every plan comply with federal regulations requiring (1) adequate notice and explanation to an employee whose claim for benefits has been denied and (2) reasonable opportunity for review of any such denial); 29 C.F.R. § 2560.503–1 (1987).

**58.** Cf. La.Rev.Stat.Ann. 22:658 (West 1978) (standard of review is one of "arbitrary, capricious, and without probable cause" grounds).

**59.** Dennard v. Richards Group, Inc., 681 F.2d 306, 313–14 (5th Cir.1982); see also Denton v. First National Bank of Waco, Texas, 765 F.2d 1295, 1300 (5th Cir.1985).

**60.** Fort Halifax Packing Co. v. Coyne, —— U.S. ——, ——, 107 S.Ct. 2211, 2217, 96 L.Ed.2d 1 (1987).

**61.** For example, an insurance statute could severably incorporate the content-regulating provisions of the statute in Metropolitan Life v. Massachusetts with a set of remedies that conflict with ERISA's. Implicit in today's ruling is the holding that La.R.S. 22:657 and 22:668 are severable, that is, the holding that La.R.S. 22:668 may remain in full effect even when 22:657 is preempted and cannot apply. Cf. Brockett v. Spokane Arcades, Inc., 472 U.S. 491, 502 105 S.Ct. 2794, 2801, 86 L.Ed.2d 394 (1985) (quoting Allen v. City of Louisiana, 103 U.S. (13 Otto) 80,

83–84, 26 L.Ed. 318 (1881)) (stating the " 'elementary principle that the statute may be in part constitutional and in part unconstitutional, and that if the parts are wholly independent of each other, that this is constitutional may stand while that which is unconstitutional shall be rejected' "); State v. Taylor, 396 So.2d 1278, 1281 (La.1981) (same).

**62.** For the text of this provision, see supra note 35.

**63.** With the apparent split whether ERISA preempts mandatory-provider statutes such as § 668, the Court is especially reluctant to express any dictum on this issue. Compare Blue Cross Hospital Service, Inc. of Missouri v. Frappier, 698 S.W.2d 326 (Mo.1985) (holding no preemption of Missouri's mandatory-provider statutes for chiropractors and psychologists), reaff'g prior decision on remand from 472 U.S. 1014, 105 S.Ct. 3471, 87 L.Ed.2d 608 (1985), vacating and remanding mem. 681 S.W.2d 925 (Mo.1984) and Blue Cross and Blue Shield of Kansas City v. Bell, 798 F.2d 1331, 1334–35 (10th Cir.1986) (holding no preemption of a Kansas mandatory-provider statute) with Metropolitan Life Insurance Co. v. Insurance Commissioner, 51 Md.App. 122, 441 A.2d 1098 (1982), rev'd, 296 Md. 334, 463 A.2d 793 (1983) and Note, ERISA Preemption of State Mandated–Provider Laws, 1985 Duke L.J. 1194 (criticizing Frappier for not

ERISA preempts and displaces § 668 just as ERISA does with § 657, then the Court has independent federal-question subject matter jurisdiction over plaintiffs' purported cause of action under § 668. On the other hand, if ERISA does not preempt § 668 (or if it preempts but does not displace § 668) so that the Court lacks independent federal subject matter jurisdiction over plaintiffs' claim under § 668, then the Court has the power to assert pendent jurisdiction over that claim because it and the purported claim under § 657 arise out of a common nucleus of operative facts.[64] Because, among other reasons, the Court can dispose of the merits of the entire matter at this time under either alternative, the Court exercises its discretion to assert such jurisdiction in the alternative that ERISA does not preempt and displace § 668.[65]

### B.

■ In the alternative that ERISA preempts and displaces both La.R.S. 22:657 and 22:668, it is clear that plaintiffs have not the scintilla of a case—nor wisely have they argued otherwise. ERISA itself does not dictate what coverage for chiropractic services insurance policies relating to plans under ERISA must provide; it merely dictates that whatever coverage is provided, the policy be fully and fairly administered within certain federal guidelines. Because defendant's policy explicitly excludes coverage for such services, defendant's denial to reimburse for such services cannot violate the policy and thus ERISA as well. Plaintiffs' entire case depends on the application

of § 668 to defendant's policy; if such application is barred by federal preemption, then plaintiffs' case fails.

■ Thus remains one issue, whether in the alternative that ERISA does not preempt and displace La.R.S. 22:668 defendant's policy exclusion violates La.R.S. 22:668. This issue is much like the one in Part III(A) above: resolution of the issue is not immediately obvious, neither party has addressed the issue, and a recent federal district court opinion has proved helpful. Guided by the text of defendant's policy and of the statute as well as by Chief Judge Parker's yet-published opinion *Guarantee Trust Life Insurance Co. v. Gavin,*[66] the Court finds in this alternative that defendant's policy does not violate La. R.S. 22:668.

Again, the Court begins its analysis with the text of the statute. La.R.S. 22:668 reads in pertinent part as follows:

A. (1) Notwithstanding any provision of any policy or contract of insurance or health benefits ..., whenever such policy or contract provides for payment or reimbursement for any service, and such service may be legally performed by a chiropractor licensed in this state, such payment or reimbursement under such policy or contract shall not be denied when such service is rendered by a person so licensed. Terminology in such policy or contract deemed discriminatory against any such person or method of practice shall be void.

The Court has found no decision on this statute other than *Guarantee Trust.*[67]

---

properly distinguishing between mandatory-provider and mandatory-benefits statutes and noting a congressional intent to preempt mandatory-provider statutes for legal services). Unfortunately, counsel concentrated their arguments on this very issue, which is unnecessary to the Court's holding.

**64.** *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

**65.** *Cf. Giardiello v. Balboa Insurance Co.,* 837 F.2d 1566, 1570 (11th Cir.1988) (affirming dismissal of claims under ERISA, but reversing dismissal of pendent state claims). Were the Court not to exercise its discretion to assert

pendent jurisdiction, the proper procedure would be to remand the state claim under the recent authority of *Carnegie–Mellon University v. Cohill,* —— U.S. ——, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988).

**66.** 678 F.Supp. 1250 (M.D.La.1988).

**67.** According to Judge Parker's opinion, the Louisiana Court of Appeal for the First Circuit has an action presently pending before it in which the statute is at issue. *See Chiropractic Ass'n of Louisiana v. State of Louisiana Through the Board of Trustees of the State Employees Group Benefits Program,* Civ. No. 87–0538 (La. App. 1st Cir. oral argument scheduled May 5, 1988).

The material facts for this issue are not in dispute: plaintiff Taylor employed the chiropractic services of plaintiff Berman and seeks reimbursement from defendant, his employer's group health insurer; defendant refuses to pay because of its policy language excluding coverage for chiropractic services. In support of its motion, defendant has submitted a copy of the policy in force at the time Mr. Taylor employed Dr. Berman's services. In opposition to the motion, plaintiffs have submitted an affidavit by Mr. Taylor stating, in pertinent part, that "he sought chiropractic treatment for his specific neck and back injuries instead of traditional medical treatment from orthopedic or general practitioner medical doctors," that "he exercised his freedom of choice in choosing chiropractic over other medical treatment for the back and neck pain which he was experiencing," and that "he feels strongly that chiropractic service should be reimbursed just as any other medical doctor's treatment would." Because the Court considers material evidence beyond the pleadings in the record, the Court must treat defendant's motion as solely one for summary judgment under Rule 56(b).[68]

*Guarantee Trust* was a diversity action by an insurer seeking a declaratory judgment against a chiropractor that its insurance policy issued to Louisiana State University for its students was valid. The policy limited coverage to 80% of eligible expenses incurred, up to $100 per calendar month, for chiropractic services. Judge Parker held that the policy did not violate § 668 by limiting its coverage of chiropractic services and was not shown to be discriminatory on its face or in practice and effect. Agreeing fully with his discussion on § 668, this Court quotes from *Guarantee Trust:*

> Defendant misreads the statute. Section 668A(1) does not require that chiropractic services be covered; it simply provides that if the policy covers a service which may legally be performed by a chiropractor, then payment for such service shall not be denied if performed by a chiropractor. The statute at least implies that chiropractors and other health care providers do perform at least some of the same services, but it does not impose a limitation upon the insurer's well established right to provide policy limits. Although the question is not before us, at least arguably the insurer could exclude all chiropractic services (without regard to who performs the service) without offending the statute since it applies only when "such policy or contract provides for payment" of a service which may legally be performed by a chiropractor.

> . . . .

> The last sentence of the statute, "Terminology in such policy or contract deemed discriminatory against any such person or method of practice shall be void," is, in the language of [former La. Civil Code] Article 16, truly "dubious." As directed by Article 16, however, when comparing the dubious last sentence to the rest of Section 668A(1) the meaning which can be ascertained is: If a policy provides for payment for a service which a chiropractor may legally perform when that service is performed by some other health care provider, but denies payment when the service is performed by a chiropractor, then the "discriminatory" provision shall be void. This policy contains no such discriminatory provision.[69]

Blue Cross' policy with Alsthom, of course, requires this Court to address the question that Judge Parker posed in dictum: whether the difference between Guarantee Trust's mere limitation of coverage and Blue Cross' total exclusion of coverage is

---

68. Defendant having styled its motion as one in the alternative for summary judgment and having submitted evidence beyond the pleadings in support of its motion, the notice-of-conversion requirement in F.R.Civ.P. 12(b) does not apply; defendant has satisfied the due notice requirement of F.R.Civ.P. 56(c). *See also* 5 C. Wright &

A. Miller, *Federal Practice and Procedure* § 1366, at 681 n. 67 (1969). Submitting evidence in opposition to the motion, plaintiffs too, apparently, recognized that evidence in their favor would be necessary to defeat the motion.

69. 678 F.Supp. at 1254.

significant. It is not. Neither Judge Parker's rationale, with which this Court agrees, nor the text of the statute dictate otherwise.

Like Guarantee Trust's policy, Blue Cross' policy is not, in the words of § 668, "discriminatory" on its face; the text in neither policy provision excludes or limits coverage when a chiropractor performs a service, but provides coverage when a medical doctor or some other person performs the same service. Nor has there been any evidence that the policy is "discriminatory in practice and effect" so as to violate § 668.[70]

Plaintiffs argue that defendant's policy "discriminates against chiropractors by excluding from payment or reimbursement those services which are traditionally rendered solely by a chiropractor."[71] Plaintiffs' own affidavit, however, belies this argument, just as the quotation above from *Guarantee Trust* suggests. By indicating that he was choosing chiropractic care over orthopedic or medical care, Mr. Taylor implicitly acknowledged that the policy exclusion language does not apply *solely* to the services a chiropractor provides. The legislative history is to the same effect.[72]

Plaintiffs confuse the difference between "mandatory provider" laws such as § 668[73] and "mandatory benefit" laws such as La. R.S. 22:669(A) or the Massachusetts statute in *Metropolitan Life*.[74] Nor is this a distinction of gossamer. The legislative concerns of the two groups of laws are to a large extent different: the former are freedom-of-choice laws designed, in part, not so much to "add to the insured's coverage," but rather to make the "choice of the provider ... of the essence of that coverage bargained for as the transferred risk,"[75] while the latter are social-welfare laws designed, in part, to force "good-risk" individuals to share health cost risks with others.[76] Further, the legislative history available on § 668 refers to this distinction.[77]

---

**70.** Because no such evidence has been presented, the Court need not determine what standard of review should be applied for discovering if a policy neutral on its face is discriminatory in practice and effect within the meaning of the statute. The reference to constitutional equal protection analysis is patent, but the significance of the reference is not.

**71.** Plaintiffs' Memorandum in Opposition at 5.

**72.** Speaking in support of the legislation at a hearing on the amendment to include self-insurers within the reach of § 668, Kathy Chittom, representing the Chiropractic Association, said "that these would be the same type of services presently being conducted by medical doctors which are being reimbursed." La. House Comm. on Commerce, Minutes of Meeting of June 13, 1984, at 5.

**73.** For other mandatory-provider provisions in Louisiana's Insurance Code, see La.Rev.Stat. Ann. 22:662 (West 1978) (podiatrists); *id.* 22:664 (optometrists); *id.* 22:665 (psychologists); *id.* 22:213.1 (West Supp.1988) (dentists); *id.* 22:669(B) (social workers). As with § 668, there is a paucity of cases discussing these other statutes.

**74.** *Compare* Plaintiff's First Amending and Supplemental Complaint, ¶ VI (characterizing § 668 as "a mandated provider/mandated benefit law") *with* Plaintiffs' Memorandum in Opposition at 3 ("22:668 is a mandatory coverage law")

*and id.* at 4 (concerning two other "mandatory provider" laws). *See generally Blue Cross and Blue Shield of Kansas City v. Bell,* 798 F.2d 1331, 1333 (10th Cir.1986) (distinguishing the two types of laws); Note, *supra* note 63, at 1202 & n. 51, 1205–06, 1215 n. 130 (describing the difference between the two types of laws).

**75.** *Blue Cross v. Bell,* 798 F.2d 1335. *See generally* Note, *supra* note 63. The Court surmises that these statutes were also intended, in part, to counteract the monopolistic tendencies once common in the medical profession and to assist those providers outside these cliques.

**76.** *See Metropolitan Life v. Massachusetts,* 471 U.S. at 730, 105 S.Ct. at 2385.

**77.** The sole official written legislative history this Court has found on § 668 is (1) a ¼–page synopsis of hearings before the Louisiana Senate Committee on Commerce for House Bill No. 948, which was passed as La. Acts 1984 No. 680, which amended § 668 to cover self-insurers as well, and (2) a two-page synopsis of hearing before the Louisiana House Committee on Commerce for the same bill.

Kathy Chittom, representing the Chiropractic Association, spoke in support of the legislation at both hearings. At the House Committee hearing, she said "that the standard arguments of increasing costs would be presented, but that this does not hold true for these are not added services" and "that these would be the same type of services presently being conducted by medi-

Finally, the Court notes that the Louisiana Court of Appeal for the Third Circuit has explicitly upheld this distinction for Louisiana's mandatory-provider statute for dentists, La.R.S. 22:213.1. The Court explained:

> Our interpretation of the statute is that it provides that benefits otherwise payable shall not be denied solely by the reason of the service being performed by a dentist. For example, if the insurance policy would normally provide coverage for the setting of a fractured jaw by a licensed physician, said benefits would not be denied because the service is performed by a dentist.

. . . .

LSA–R.S. 22:213.1 does not require the inclusion of dental coverage in all policies of insurance issued in Louisiana and therefore, as the services rendered in the instant matter were clearly excluded, the trial court did not err in granting defendant's motion for summary judgment.[78]

This Court must apply this holding equally to La.R.S. 22:668.

In sum, defendant's policy does not violate § 668. It is well-settled Louisiana law that an insurer may limit its liability so long as its uses clear and unambiguous language giving notice of the limitation or exclusion and such does not violate statutory law or public policy.[79] Because the policy exclusion language at issue is clear and unambiguous, the Court must give it full effect.

Accordingly, plaintiffs' claims for wrongful-breach-of-an-insurance-contract must fail, under both § 668 and ERISA.[80]

## IV.

In conclusion, defendant is entitled to summary judgment dismissing plaintiffs' complaint with prejudice and at plaintiffs' costs. The Clerk of Court is directed to enter final judgment accordingly.

cal doctors which are being reimbursed." La. House Comm. on Commerce, Minutes of Meeting of June 13, 1984, at 5; *see also supra* text accompanying note 72. At the Senate Committee hearing, she acknowledged the distinction between the two types of laws when she said "that no additional services would be included in the legislation but would provide for extension of the insurance equality law to the self insureds." La. Senate Comm. on Commerce, Minutes of Meeting of June 27, 1984, at 4.

The redactors' synopses are, to be most charitable, hardly the model of lucid prose and artful *procès-verbaux*, but the inference to be drawn from them is clear enough: mandatory-benefits, or in the redactors' words mandatory-services, provisions are distinct from mandatory-provider, or equality-of-providers, provisions.

**78.** *Schrumpf v. Georgia International Life Insurance Co.*, 413 So.2d 267, 269 (La.App. 3d Cir.), *writ denied*, 414 So.2d 1252 (La.1982).

**79.** *Scarborough v. Travelers Insurance Co.*, 718 F.2d 702, 707 (5th Cir.1983); *Oceanonics, Inc. v. Petroleum Distributing Co.*, 292 So.2d 190, 191 (La.1974).

**80.** Because neither ERISA nor La.R.S. 22:668 provides plaintiffs any remedy in this matter, the Court need not, and does not, determine whether Berman has standing under ERISA as an assignee to Mr. Taylor's claims.