Carl SUTHERLAND

v.

UNITED STATES LIFE INS.

No. Civ.A. 00–2308.

United States District Court, E.D. Louisiana.

April 9, 2003.

N. Madro Bandaries and Kenneth Goodwin, New Orleans, LA, for Plaintiff.

Covert Geary and Joseph Piacun, New Orleans, LA, for Defendant.

### ORDER AND REASONS

DUVAL, District Judge.

Before this Court is the Defendant, United States Life Insurance Company's Motion to Limit Case to Administrative Record, (Rec.Doc. 37), as well as its Motion for Partial Summary Judgment, (Rec. Doc. 40). For the reasons outlined below, the Court grants both motions.

The Court will first address the Motion for Summary Judgment because the resolution of this motion resolves the Motion to Limit the Administrative Record.

**Facts:**

Dr. Carl Sutherland brought the instant lawsuit against United States Life Insurance Company, ("U.S.Life"), claiming entitlement to disability benefits under his employer provided group insurance plan, the Tulane University Medical Center Faculty Practice Plan, ("The Tulane Plan"). Before his disability prevented him from working, Dr. Sutherland was an academic surgical oncologist for the Tulane University School of medicine. The parties vigorously dispute exact date Dr. Sutherland became disabled: Sutherland contends that he became disabled in November 1996, while U.S. Life maintains that he did not become disabled until April of 1998. The onset date bears directly on the amount of benefits to which Sutherland is

entitled and the length of time for which he can obtain them.

Sutherland's claim for benefits was initially denied because he failed to submit sufficient proof to support his claimed disability. Some time after the denial of his claim, Sutherland filed the instant suit; however on February 17, 2001, he filed an administrative appeal and this case was stayed pending resolution of the appeal and the exhaustion of his administrative remedies. U.S. Life eventually accepted the claim and in April 2002 began paying benefits in the amount of 60% of Sutherland's reported pre-disability earnings. Since this time, Sutherland has exhausted his administrative remedies, and the Court recently granted his request to reopen the litigation.

Sutherland now claims that he is entitled to 70% of his reported pre-disability earnings until he reaches age 70, pursuant to the terms of the Tulane Plan which were in effect as of November of 1996, the time he claims he first became disabled. Sometime in April of 1998, which is the date the plan administrator determined Sutherland became disabled, the terms of the plan had changed to provide only 60% of pre-disability earnings until the beneficiary reaches age 65. He also alleges that he is entitled to a monthly disability benefit of 70% of his pay until age 70 commencing from November of 1996, certain disability premiums paid to U.S. Life, judicial interest on disability payments due and untimely paid, as well as judicial interest on all premiums collected, attorneys fees and costs, and compensation pursuant to La. Rev.Stat. 22:1220.

The Court heard oral arguments on the two motions in this case on March 19, 2003.

### U.S. Life's Motion for Partial Summary Judgment:

In its Motion for Partial Summary Judgment, U.S. Life maintains that Sutherland's state law claims are pre-empted by ERISA. First, it contends that ERISA applies to the Tulane Plan because it is not excepted by the "safe harbor" provision promulgated by the Department of Labor. See 29 C.F.R. § 2510.3–(1)(j)(2002). Secondly, U.S. Life argues that Sutherland's claims under La.Rev.Stat. 22:1220 should be dismissed because they are pre-empted by ERISA.[1] Specifically, U.S. Life contends that this statute is a penalty statute, provides additional remedies not contemplated by ERISA, and therefore is preempted by it. Additionally, U.S. Life alleges that La.Rev.Stat. 22:1220 is inapplicable to the instant plan because subsection 22:1220(D) states that the statute is inapplicable to "health and accident plans."

Lastly, U.S. Life requests that the Court enter an "ERISA case order" limiting discovery and setting a time line for cross-motions for summary judgment. It also requests that the Court follow a proposed time line which includes:

1. Requiring the defendant within 15 days of the ruling to file into the record and to provide opposing counsel the entire administrative record;

2. Requiring the parties to file cross motions for summary judgment within 45 days of the instant order;

3. Issuing an order precluding discovery; and

4. Issuing an order removing the case from the trial docket.

U.S. Life states that this type of order is similar to those routinely issued in the

---

1. The Court notes that the plaintiff has amended his complaint to eliminate a cause of action under La.Rev.Stat. 22:657.

Western District of Louisiana. (See Defendant's Exhibit A). This order would effectively limit the case to the administrative record, allowing only for supplements to the record, and preventing any evidence relating to Sutherland's state law claim under La.Rev.Stat. 22:1220.

Sutherland argues that the Tulane Plan is governed by both ERISA and state law. He contends that the Tulane Plan falls within the "Safe Harbor" provision of ERISA, and therefore, ERISA is not the only remedy available to him. Additionally, he maintains that he has a state law cause of action under La. R.S. 22:1220 because the statute is "saved" from ERISA preemption by the "savings clause." He reasons that by virtue of the fact that La.Rev.Stat. 22:1220 "regulates" insurance, he may bring this state law claim in tandem with his claim for relief under ERISA.

In support of his argument that ERISA does not preempt La.Rev.Stat. 22:1220, Sutherland relies primarily on *UNUM Life Ins. Co. v. Ward.* He contends that La.Rev.Stat. 22:1220 is similar to the California "notice-prejudice" rule in that both statutes "regulate insurance" under the savings clause.

### Standard of Review on Motion for Summary Judgment

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant meets this burden, the burden shifts to the non-movant "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. "[M]ere allegations or denials" will not defeat a well-supported motion for summary judgment. Fed.R.Civ.P. 56(e). Rather, the non-movant must come forward with "specific facts" that establish an issue for trial. *Id.*

When deciding a motion for summary judgment, the Court must avoid a "trial on affidavits. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" are tasks for the trier-of-fact. *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. To that end, the Court must resolve disputes over material facts in the non-movant's favor. "The party opposing a motion for summary judgment, with evidence competent under Rule 56, is to be believed." *Leonard v. Dixie Well Service & Supply, Inc.,* 828 F.2d 291, 294 (5th Cir.1987).

### Does ERISA apply to the plan?

The first question the Motion for Summary Judgment raises is whether ERISA applies to the plan. If it doesn't, then the plaintiff's state law claims may apply. *See*

29 U.S.C. § 1144(a). The existence of an ERISA plan a question of fact. *McDonald v. Provident Indem., Life Ins., Co.* 60 F.3d 234, 235 (5th Cir.1995). ERISA defines an employee welfare benefit plan as:

> any plan, fund or program which was ... established or maintained by the employer or by an employee organization, or by both, to the extent that such plan, fund or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise ... medical, surgical or hospital care or benefits.

*Id.* at 236–36; 29 U.S.C. § 1002(1).

■ The Fifth Circuit applies a tripartite test for determining whether a particular plan qualifies as an employee benefit plan. *Meredith v. Time Ins. Co.* 980 F.2d 352, 355 (5th Cir.1993). The Court must determine whether the plan (1) exists; (2) falls within the safe harbor provision established by the department of labor; and (3) satisfies the primary elements of an employee benefit plan, defined above. *Id.*

■ The parties do not dispute elements (1) or (3)-that a plan exists or that it satisfies the elements of an employee benefit plan. However, the plaintiff argues in his brief that the safe harbor provision applies to exclude it from ERISA. The safe harbor provision reads in relevant part:

> *Certain Group or group-type insurance programs.* [T]he terms of an "employee welfare benefit plan" and "welfare plan" shall not include a group or group-type insurance program offered by an insurer to employees or members of an organization, under which:
> 
> (1) No contributions are made by an employer or employee of an organization;
> 
> (2) Participation (sic) the program is completely voluntary for employees or members;
> 
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to the employees or members, to collect premiums through payroll deductions or dues check-offs and to remit them to the insurer; and
> 
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions.

29 C.F.R. § 2510.3–(1)(j)(2002).

Courts have found the safe harbor provision and the decisions construing it, confusing and difficult to interpret. *See Suggs v. Pan American Life Ins.* 847 F.Supp. 1324, 1331 (S.D.Miss.1994). However, it is well settled that all four conditions must be present in order for the plan to fall within the safe harbor provision and to be excluded from the scope of ERISA. "Given the language of the regulation, especially the use of the conjunction 'and,' the presence of all four conditions is jointly sufficient to cause the program to be excluded from the definition of a 'group plan.'" *Kidder v. H & B Marine, Inc.* 932 F.2d 347 (5th Cir.1991); *Hansen v. Continental Ins. Co.,* 940 F.2d 971 (5th Cir.1991)("Group insurance plans which meet each of these criteria are excluded from ERISA's coverage."); *see also Bernofsky v. Teachers Insurance and Annuity Ass'n,* 1998 WL 419725, *1 (E.D.La.1998). Fifth Circuit case law therefore, suggests that in order for a plan to be excluded by the safe harbor provision, all factors must be present. If a plan satisfies only some of the

factors, ERISA may still apply, unless it is preempted.

The plaintiff initially argued that the safe harbor provision applies because his employer did not contribute to the plan (the first factor), and because the plan was voluntary, (the second factor). Sutherland does not discuss whether the third and fourth factor have also been met. However, at oral argument on March 19, 3003, he conceded that the plan is, in fact mandatory, as U.S. Life maintained in its brief. At the hearing, U.S. Life directed the Court's attention to the portion of the policy which stated that the plan was, in fact, mandatory. Because there is no genuine issue of fact as to the absence of one of the Safe Harbor factors, U.S. Life is entitled to judgment as a matter of law that the Tulane Plan is governed exclusively by ERISA, unless it is "saved" under the saving's clause.

## Is Sutherland's state law claim saved from preemption by the savings clause?

 At the outset, the Court notes that La.Rev.Stat. 22:1220 is inapplicable to the Tulane Plan. The statute specifically states in subsection (D), that 22:1220 is inapplicable to "health and accident plans." [2] As defined by La.Rev.Stat. 22:6(2), a health and accident plan is "[i]nsurance against bodily injury, disablement or death by accident and against disablement resulting from sickness and every insurance appertaining thereto." Neither party asserts that Tulane Plan is anything other than a "health and accident" insurance policy. In fact, Sutherland, in his Memorandum in Opposition to the Motion to Limit states that the Tulane Plan is a "health and accident plan." *See* Memorandum in Opposition to the Motion to Limit, p. 6. That being said, the Court need not inquire into whether or not ERISA

2. § 22:1220. Good faith duty; claims settlement practices; cause of action; penalties

 A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.

 B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:

 (1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.

 (2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.

 (3) Denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured.

 (4) Misleading a claimant as to the applicable prescriptive period.

 (5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.

 C. In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater. Such penalties, if awarded, shall not be used by the insurer in computing either past or prospective loss experience for the purpose of setting rates or making rate filings.

 D. The provisions of this Section shall not be applicable to claims made under health and accident insurance policies.

 E. Repealed by Acts 1997, No. 949, § 2.

 F. The Insurance Guaranty Association Fund, as provided in R.S. 22:1375 et seq., shall not be liable for any special damages awarded under the provisions of this Section.

preempts 22:1220. However, for the sake thoroughness, the Court will analyze whether or not 22:1220 is preempted by ERISA.

At this time, no court in this circuit has addressed the issue of whether 22:1220 is preempted by ERISA, and therefore the Court has no case law to serve as guidance on the issue of whether 22:1220 is preempted. However, other courts have analyzed 22:657, which is also a penalty statute and concluded that it is in fact preempted because it provides remedies outside ERISA's comprehensive civil enforcement scheme.

**ERISA preemption analysis**

■ According to 29 U.S.C. § 1144(a), ERISA preempts a state law that "relates to" an employee benefit plan. This provision states that ERISA "shall supercede any and all State laws insofar as they may now or hereinafter **relate to any employee benefit plan.**" 29 U.S.C. § 1144(a). A state law "relates to an employee benefit plan" when two requirements are met: (1) when the state law claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan, and (2) when the claim directly affects the relationship between the traditional ERISA entities-the employer, the plan, and its fiduciaries, and the participants and beneficiaries. *Hubbard v. Blue Cross & Blue Shield*, 42 F.3d 942, 945 (5th Cir.1995). Section 22:1220 unquestionably satisfies both elements. It addresses the right to receive benefits under the terms of an ERISA plan because it pertains to an insurer's duty to satisfy claims in good faith. It "relates to an employee benefit plan" because it directly touches upon the insured's right to receive benefits under the policy.

The ERISA preemption analysis next calls for the Court determine whether the state law is "saved" by the savings clause, and be enforced because it is a statute that "regulates insurance." The savings clause provides that insofar as a state law "regulates insurance, banking or securities," the state law escapes preemption and consequently, the state law can be enforced against the insurance company. 29 U.S.C. § 1144(b)(2)(A).

The framework for analyzing whether a state law "regulates insurance" within the meaning of the savings clause is laid out in *UNUM:*

First, we ask whether from a common sense view of the matter, the contested prescription regulates insurance (citation omitted). Second, we consider three factors employed to determine whether the regulation fits within the "business of insurance" as that phrase is used in the McCarran–Ferguson Act (citation omitted): first, whether the practice has the effect of transferring or spreading a policy holder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry (citation omitted).

*UNUM*, 526 U.S. 358 at 367–68, 119 S.Ct. 1380, 143 L.Ed.2d 462.

No other court appears to have considered whether 22:1220 falls under the savings clause and therefore could be characterized as a statute that regulates insurance. However, the statute is similar to other statutes that the Supreme Court has determined "regulate insurance." *See Metropolitan Life*, 471 U.S. at 728, n. 2, 105 S.Ct. 2380; *see also UNUM*, 526 U.S. 358 at 376, n. 5, 119 S.Ct. 1380, 143 L.Ed.2d 462. In *Metropolitan Life*, the Court explained that "[l]aws regulating the insurer include ... [l]aws regulating aspects of transacting the business of group insurance [such as] those regulating claims prac-

tices or rates." Section 22:1220 penalizes an insurer for failing to "adjust claims fairly and promptly and [failing] to make a reasonable effort to settle claims" or by committing any one of the other enumerated acts of bad faith in handling a claim or disclosing information about a policy. La.Rev.Stat. 22:1220. Although this state law claim appears, after a cursory analysis, to regulate insurance, the Court will not undergo an extended McCarran–Ferguson analysis. Determining whether § 22:1220 regulates insurance is unnecessary because § 22:1220 is preempted for another reason: it provides remedies that are outside the ambit of ERISA's civil enforcement provision. Even if a state law "regulates" insurance under the savings clause, it may still be preempted if it provide additional remedies outside those articulated in ERISA. Consequently, the Court will assume for the limited purpose of this Motion for Summary Judgment that the statute "regulates" insurance.

**Are the penalty and damage provisions under § 22:1220 preempted by ERISA's civil enforcement remedies?**

As stated earlier, no Louisiana state court or federal court has ever addressed the issue of whether La.Rev.Stat. § 22:1220 regulates insurance. Similarly, the Court has been unable to find a case that bears directly on the question of whether § 22:1220 contains remedies that conflict with ERISA's civil enforcement provisions.

The Supreme Court, in *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 55, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), addressed the question of whether a common law claim for failure to pay benefits was preempted by ERISA because the remedies encompassed in 29 U.S.C. § 1132(a) are exhaustive and do not leave room for state remedies. The Court stated that,

the detailed provisions of [1132] set forth a comprehensive civil enforcement scheme that represent a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA. The six carefully integrated civil enforcement provisions found in [1132] of the statute as finally enacted provide strong evidence that Congress did not intend to authorize other remedies that is simply forgot to incorporate expressly.'

*Id.* at 53, 107 S.Ct. 1549.

*Pilot Life* and its progeny instruct this Court to conclude that any state law that provides a remedy that "supplement[s] or supplant[s] the remedies available under ERISA" is by matter of course, preempted. *Rush Prudential HMO, Inc. v. Moran,* 536 U.S. 355, 122 S.Ct. 2151, 2165, 153 L.Ed.2d 375 (2002)(relying on *Pilot Life* ). The Supreme Court in *Rush Prudential* reaffirmed *Pilot Life's* conclusion that a state law which provides an alternative remedy undercuts the policy behind ERISA, which is to create "a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans." *Id.* (quoting from *Pilot Life* ).

Both the Fifth Circuit and district courts in this circuit have applied the Supreme Court's reasoning in their analysis of La.Rev.Stat. 22:657. *See Arana v. Ochsner Health Plan, Inc.,* 302 F.3d 462 (5th Cir.2002); *Clancy v. Employers Health Ins. Co.,* 82 F.Supp.2d 589 (E.D.La.

1999); *Tilton v. Wal–Mart Stores, Inc.,* 1999 WL 307606 (E.D.La. May 13, 1999); *Folse v. The Prudential Ins. Co.,* 1997 WL 539666 (E.D.La. Aug. 26, 1997); *Chatelain v. Southern Baptist Health Sys.,* 907 F.Supp. 206 (E.D.La.1995); *Coles v. Metropolitan Life Ins. Co.,* 837 F.Supp. 764 (E.D.La.1993); *Jones v. U.S. Fidelity and Guaranty Co.,* 1992 WL 202327 (E.D.La. 1992); *Taylor v. Blue Cross/Blue Shield,* 684 F.Supp. 1352 (E.D.La.1988). These cases have uniformly held that § 22:657 is preempted by ERISA because it provides punitive damages and mandatory attorney fees which ERISA does not recognize.

In light of these cases, it is apparent that § 22:1220, falls into the same trap as § 22:657 regarding ERISA preemption because it also provides remedies that are alternative and beyond the scope of ERISA's civil enforcement scheme. Section 22:1220 provides for "any damages sustained as a result of the breach" of an insurer's duty of good faith and fair dealing. La.Rev.Stat. 22:1220(A). It also states that "[i]n addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater." La.Rev.Stat. 22:1220(C). Subsection (A) clearly constitutes an alternative remedy to ERISA's civil enforcement provisions because 29 U.S.C. 1132(a) does not authorize damages for breach of a the insurer's duty. Similarly, subsection (C) is a penalty provision which is also not authorized by 29 U.S.C. 1132(a).[3]

---

**3.** 29 U.S.C.A. § 1132. Civil enforcement

(a) Persons empowered to bring a civil action

A civil action may be brought—

(1) by a participant or beneficiary-

(A) for the relief provided for in subsection (c) of this section, or

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

(2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title;

(3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;

(4) by the Secretary, or by a participant, or beneficiary for appropriate relief in the case of a violation of 1025(c) of this title;

(5) except as otherwise provided in subsection (b) of this section, by the Secretary (A) to enjoin any act or practice which violates any provision of this subchapter, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this subchapter;

(6) by the Secretary to collect any civil penalty under paragraph (2), (4), (5), (6), or (7) of subsection (c) of this section or under subsection (i) or (*l*) of this section;

(7) by a State to enforce compliance with a qualified medical child support order (as defined in section 1169(a)(2)(A) of this title);

(8) by the Secretary, or by an employer or other person referred to in section 1021(f)(1) of this title, (A) to enjoin any act or practice which violates subsection (f) of section 1021 of this title, or (B) to obtain appropriate equitable relief (i) to redress such violation or (ii) to enforce such subsection; or

(9) in the event that the purchase of an insurance contract or insurance annuity in connection with termination of an individual's status as a participant covered under a pension plan with respect to all or any portion of the participant's pension benefit under such plan constitutes a violation of part 4 of this title [FN1] or the terms of the plan, by the Secretary, by any individual who was a participant or beneficiary at the time of the alleged violation, or by a fiduciary, to obtain appropriate relief, including the posting of security if necessary, to assure receipt by the participant or beneficiary of the amounts provided or to be provided by

Although the plaintiff has insisted that *UNUM* rescues § 22:1220 from preemption because § 22:1220 is similar to California's "notice prejudice rule," the Court disagrees. *UNUM* is distinguishable from the instant case because in *UNUM,* the notice prejudice rule provided the relevant rule of decision for the suit pursuant to 29 U.S.C. § 1132(a). *UNUM,* 526 U.S. at 377, 119 S.Ct. 1380. In other words, the plaintiff in *UNUM* sought only benefits due under ERISA, using the "notice prejudice rule" as the relevant rule of law, and did not attempt to utilize the state law's remedy. *Id.* at 377, n. 7, 119 S.Ct. 1380. The Supreme Court held that the case did not implicate the question of whether the "notice-prejudice" rule was preempted by ERISA's civil enforcement remedies. *UNUM,* 526 U.S. at 376–77, 119 S.Ct. 1380. Because *UNUM* did not address civil enforcement preemption in relation to the "notice prejudice rule," Sutherland's claim that *UNUM* provides this Court with a reason to allow his § 22:1220 claim to survive summary judgment is without force.

**Conclusion**

The Court finds that there is no genuine issue of material fact as to the application of ERISA to the Tulane plan. Additionally, the plaintiff has not created an issue of fact that the Tulane Plan is something other than a health and accident plan. Because the plaintiff has not refuted this characterization of the plan, the Court finds that La.Rev.Stat. § 22:1220, which is inapplicable to health and accident plans, consequently is inapplicable to the Tulane Plan. Further, even assuming that La.Rev. Stat. § 22:1220 applies, the Court finds that there is no genuine issue of material fact to dispute that ERISA preempts the plaintiff's state law claim under La.Rev.

such insurance contract or annuity, plus reasonable prejudgment interest on such

Stat. § 22:1220. Therefore, U.S. Life is entitled to summary judgment dismissing Sutherland's state law claims and thereby limiting this case to the administrative record. Accordingly,

**IT IS ORDERED** that the Defendant's Motion for Summary Judgment, (Rec.Doc. 40), is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that because ERISA preempts the plaintiff's state law claim, this case is limited to the administrative record and the Court **GRANTS** the defendant's Motion to Limit Case to Administrative Record, (Rec.Doc. 37).

**IT IS FURTHER ORDERED** that Defendant has 15 days from the date of this order, or until **April 24, 2003 at 4:30 p.m.** to file the entire administrative record into the record and to provide a copy of the entire record to opposing counsel.

**IT IS FURTHER ORDERED** that the parties shall file cross motions for summary judgment within 45 days of the instant order, or by **May 26, 2003 at 4:30 p.m.**

**IT IS FURTHER ORDERED** that discovery in this case is hereby precluded.

**IT IS FURTHER ORDERED** that this case is hereby removed from the trial docket.